THE NATIONAL SURETY COMPANY OF NEW YORK V.
THE WYANDOTTE COAL AND LIME COMPANY.

No. 15,267.  (92 Pac. 1111.)

SYLLABUS BY THE COURT.

1. PAVING CONTRACTS—*Action on Contractor's Bond for Ma-
terial Furnished—Constructive Notice of Fraud.*   While one
who with knowledge of the fraud and illegality furnishes ma-
terial to a contractor with a city to carry out a paving con-
tract which was fraudulently procured and is illegal is barred
from recovering from the surety of the contractor for the
material furnished, he is not, as between himself and the
surety company, bound or barred by mere constructive notice
of such fraud or illegality.  The knowledge which binds him
must be actual, and so ample that in furnishing material in
furtherance of the unlawful contract he can be regarded as
an active agent in promoting the fraud and illegality.  (*Bond-
ing Co. v. Dickey,* 74 Kan. 791, 88 Pac. 66.)

2. ——— *Proof that Material Was Used in Construction.*   The

case of *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164, followed as to the strictness and extent of proof necessary to show that all the material sold and furnished by the claimants for the improvement was actually used in its construction.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed December 7, 1907. Affirmed.

*Frank Hagerman,* and *A. L. Berger,* for plaintiff in error.

*J. E. McFadden,* and *R. E. Morris,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Wyandotte Coal and Lime Company instituted this action against W. W. Atkin to recover $533.36 for material which it furnished to him to be used in the paving of a street, and also to recover the same claim from the National Surety Company under a bond which it gave undertaking to pay all bills for labor and material incurred by Atkin in paving that street.

Atkin made no defense, but the National Surety Company set up a number of defenses, one of which was that the Diamond Brick and Tile Company, in order to defeat competition in paving the street and in violation of the statute requiring competition in the letting of such contracts, had secretly and fraudulently hired petitioners and had otherwise assisted in procuring petitioners who asked that the paving be done with brick of the Diamond brand, which was exclusively manufactured and sold by that company; that the illegal action extended to procuring the passage of an ordinance by the city council and inducing the contractor to bid on the work and enter into the contract, and that all was done in order that the company might sell its brick to the exclusion of any other. It was then alleged that if the Wyandotte Coal and Lime Company sold any of the material upon which it based its claim

the sale and delivery were made with full knowledge of the illegal action of the Diamond Brick and Tile Company.

A demurrer to this defense was interposed and sustained, but upon a review in this court the ruling was reversed. (*Atkin v. Coal Co.*, 73 Kan. 768, 84 Pac. 1040.) Later, upon issues joined, a trial was had, and when the plaintiff had offered its testimony the surety company filed its demurrer to the evidence, which was overruled, and no testimony being offered in behalf of the surety company verdict and judgment were given for the plaintiff.

It is contended that the testimony was insufficient to sustain the plaintiff's claim or warrant the judgment that was rendered, in view of the taint in the proceedings leading up to the paving contract and in the contract itself. It has been directly held that where a paving contract is obtained by stifling competition in violation of a statute the proceedings, including the contract, are illegal and void, and that those who furnish labor or material with full knowledge of the facts which render the proceedings illegal are bound thereby and cannot maintain an action against the surety of the contractor. (*Surety Co. v. Brick Co.*, 73 Kan. 196, 84 Pac. 1034; *Atkin v. Coal Co.*, 73 Kan. 768, 84 Pac. 1040.) At the trial no testimony was offered showing that the Wyandotte Coal and Lime Company had actual knowledge of any of the facts which tainted the proceedings or contract with illegality. Its position differs materially from that of the brick company, which, it was alleged, acted fraudulently in procuring petitioners and in securing the enactment of an ordinance and the making of a contract, all to accomplish its purpose of suppressing competition in the bidding.

If, as alleged in the answer of the surety company, the plaintiff in this action had furnished cement with full knowledge of the illegal transactions, it would, in a sense, have been a participant in the fraud and illegality and would have occupied no better position

than the parties who initiated and carried out the unlawful scheme. But plaintiff had no part in the proceedings preliminary to the contract nor with the passage of the city ordinance. It had nothing to do with Atkin's contract with the city and was not even a party to the bond which the surety company gave to guarantee the payment of labor and material furnished to the contractor.

It is said, however, that the plaintiff was chargeable with knowledge that the material was furnished to carry out a contract with the city—a contract mentioned in its petition, and that notice should have been imputed to it of the illegality disclosed by the contract itself and the proceedings of the city council. The contract, it is true, was spoken of in the plaintiff's petition and referred to in its evidence, and it is argued that as its claim is based on that contract it must fail. Its claim against the surety company is based upon the surety bond, in which that company agreed to pay all bills for material which Atkin incurred in the prosecution of the work and failed to pay; and, besides, the relation between it and the surety company is altogether too remote for the application of the doctrine of constructive notice of the wrong-doing of other material men or contractors. That doctrine, it has been said, "has always been regarded as a harsh necessity; and the statutes which create it have always been subjected to the most rigid construction." (*Call v. Hastings,* 3 Cal. 179, syllabus.)

The law imputes knowledge to a person acquainted with facts which make it his duty to inquire, where his act or negligence is such as to lead to imposition upon an innocent party. Facts and circumstances from which knowledge of the fraud and illegality in the present case might be inferred were as accessible to the surety company as to the plaintiff, and that company, having so close a connection with the illegal contract, has no right to insist that the plaintiff, who furnished material on the faith of its guaranty, shall

exercise greater diligence than it did to discover the fraud. As against the surety company nothing short of actual knowledge of the illegal contract and of the fraudulent steps by which it was procured can bind the plaintiff, who sold the material on the security of the bond given by the surety company. It must be a knowledge so ample and complete that those who contribute labor or material in furtherance of the unlawful contract can be regarded as active agents in promoting the fraud and illegality. This was in effect held in *Bonding Co. v. Dickey,* 74 Kan. 791, 88 Pac. 66, where another surety company asked to be relieved from responsibility for material used in a contract with a city, the payment for which it had guaranteed, because the contract was made in violation of a statute. There, as here, it was urged that the plaintiff furnishing material to the contractor was bound to take notice of what the contract and records of the city disclosed, and *Surety Co. v. Brick Co.,* 73 Kan. 196, 84 Pac. 1034, was cited as an authority. The court, however, refused to apply the doctrine of constructive notice of the illegality to the material man, and pointed out that he could only be justly bound and barred from a recovery where he had actual knowledge and was in a sense an active agent in carrying out the illegal features of the contract or transaction. That case is sufficient authority for the holding of the trial court that the plaintiff was not barred from recovering the amount of its claim, which it had established, from the surety company.

The only remaining question arises upon the contention that there was a failure to prove that all the cement sold by the plaintiff and included in its claim went into the construction of the pavement. The testimony, however, although not full and explicit in that respect, was certainly sufficient to make a *prima facie* case of delivery and use, and since there were no discrediting circumstances, or anything to raise a suspicion that the cement furnished was not used for the

purpose for which it was purchased, the court was justified in holding the testimony to be sufficient. No greater strictness of proof is required in this case than would be in the enforcement of a claim for a mechanic's lien. In a case of that kind, where it was contended that there was a lack of positive and specific proof that the articles furnished for the building were actually used in its construction, Mr. Justice Brewer said:

"It is undoubtedly true that it is not affirmatively and specifically shown that each separate article charged in these bills actually went into such buildings. It does appear, however, that each one of the three separate claimants made contracts for furnishing materials for said buildings; that in pursuance of said contracts they furnished materials, and supposed that they were to be used in the construction of said buildings; and, as to a few articles, that they did in fact go into said buildings. To this there is no contradictory testimony; nothing tending to show that any of the materials so delivered were in fact taken away by the builder and used elsewhere; nothing even tending to raise a suspicion that there was any deviation of materials from their intended and contracted use. Under these circumstances, it would not be justice to refuse the lien." (*Rice & Floyd v. Hodge Bros.*, 26 Kan. 164, 170.)

(See, also, *McGarry v. Averill*, 50 Kan. 362, 31 Pac. 1082, 34 Am. St. Rep. 120; *Seattle Lumber Co. v. Sweeney* [Wash.], 85 Pac. 677.)

The judgment of the district court is affirmed.