No. 20,591.

THE STANDARD ASPHALT & RUBBER COMPANY, *Appellee*, v. THE TEXAS BUILDING COMPANY et al. (THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*).

### SYLLABUS BY THE COURT.

1. RAILROAD BUILDING CONTRACT—*Indemnity Bond—Liability of Surety for Material Furnished—Alterations in Contract.* In a building contract, the performance of which was secured by a guaranty company, provisions were included for alterations and additions and that payments should be made in a particular way as the work progressed. Because of the inability of the contractor to meet claims and obligations as they accrued upon the work, an arrangement was entered into between the contractor and the railway company by which payments were made in a different way, but as the change in the plan of payments was made in good faith and did not result in injury to the guaranty company, the change did not operate to relieve it from liability upon its bond.

.2. .SAME—*Purpose of Statutory Indemnity Bond—Benefit of Laborers—Mechanics and Material Men.* The bond of the guaranty company was given pursuant to the provisions of sections 7006 and 7007 of the General Statutes of 1909, and is required for the protection and benefit of laborers and mechanics and those who furnish material for railroad construction. Such claimants have rights under the bond independent of the rights of the obligee, and no acts or omissions of the obligee or of the contractor, for which the laborers, mechanics or materialmen are not responsible, will relieve the guaranty company from or affect its liability under the bond for the claims of the laborers, mechanics and materialmen.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed January 6, 1917. Affirmed.

*S. B. Amidon, D. M. Dale, S. A. Buckland,* all of Wichita, *J. B. Tomlinson,* and *C. D. Shukers,* both of Independence, for the appellant.

*T. H. Stanford,* and *G. T. Stanford,* both of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought upon a bond given to secure the payment of claims for labor and material employed and used in railroad construction.

The Texas Building Company entered into a contract with the Wichita Union Terminal Railway Company for the construction of parts of a union station at Wichita. A number of contracts were made by it for that purpose, and the one involved in this proceeding was designated as contract No. 10, which covered the construction of retaining walls, subways and other concrete structures. In that contract certain parts of the work were to be done for lump-sum prices, amounting to $67,210, while other parts of the work were to be paid for by the cubic yard or lineal foot. In the contract it was provided that alterations and changes increasing or diminishing the expense of the work might be made without invalidating the contract. It was also stipulated that approximate estimates should be made monthly, and payments made to the contractor about the 20th of each month, less ten per cent of the amount of the monthly estimate, which the railway company was authorized to retain until the performance of the contract was complete.

It was also provided that the contractor should give a bond signed by a surety company for the faithful performance of the contract, and a bond was given under the statutory requirement in section 7006 of the General Statutes of 1909, to secure the payment of all persons who might perform labor or furnish material in carrying on and completing the work. A part of the work was done and payments therefor made upon a bond given by another surety company, and afterwards the defendant, The United States Fidelity & Guaranty Company, became security for the completion of the contract and the payment of the labor and material which are involved in this action. The Standard Asphalt & Rubber Company, in pursuance of an agreement with the contractor, furnished waterproofing and the labor necessary for installing it to the amount of $10,127.28. This claim was not all paid by the contractor, and the present action was brought upon the bond to recover the unpaid balance, and judgment for $8432.28 was awarded.

On this appeal it is contended that the alterations and additions which were made involved such an increase in the cost of the work that the guaranty company is released from liability, at least for the increased cost. It is said that the cost of the work was $113,944.12, while the contract price was $67,210.50, and that while alterations and additions were provided for in the contract, such radical alterations and such large increases could not have been within the contemplation of the parties. It appears from the record, however, that the contract price was not limited to $67,210.50. That was the amount which particular parts of the work were to cost, and on which lump prices were stipulated. Other parts of the work provided for in the contract which could not be definitely ascertained until the work was completed, were to be paid for by the foot or yard. This work was included in the contract as much as that which was to be done at lump prices, and amounted to $42,938.38, leaving only the inconsiderable sum of $5165.26 for the payment of what might be classed as additions and extras. It is readily seen that the alterations and extras are not excessive for work done under such a contract, and can not be said to be beyond the contemplation of the parties nor outside of the obligation of the guaranty company.

It is next contended that the guaranty company is released

from liability because payments were not made in the mode prescribed in the contract. It contained a provision that payments should be made upon monthly estimates about the 20th day of each month, less ten per cent of such monthly estimate, the percentage to be retained until the completion of the work. The inability of the building company to meet its obligations made a change in the manner of payments necessary to the continuation of the work by the building company. The trial court found:

"In October, 1913, it became apparent that the building company was out of funds and would not be able to meet its pay rolls and on October 24, 1913, an arrangement was entered into between the Building Company and the Terminal Company by which the National Bank of Commerce of Wichita, advanced each week to the Building Company an amount sufficient to meet the pay rolls and some few other items upon the assurance from the Terminal Company that the Bank would be protected by payment to it of such sums as would be due the Building Company as the work progressed to completion."

This arrangement continued from October, 1913, till the work was completed in April, 1914, the bank taking care of the payroll, and also paying some items for material and freight charges and interest on money advanced, as well as an attorney fee of $100 on a liability claim under the contract. The trial court found that the change in the mode of payment was made to avoid delay and an increase of expense and damages that would have necessarily accrued if there had been a forfeiture or abandonment of the work by the contractor for lack of funds. With the assistance of the bank secured by the guaranty of the railway company the building company was enabled to finish the work. The arrangement was made and carried out in good faith and resulted in no wrong or injury to the guaranty company. As will be seen, no substantial modification in the contract was made. It was not abandoned by the contractor nor was it assigned or taken over by the railway company, but it was performed and completed by the building company through the assistance rendered by the bank at the instance and upon the security of the railway company. While an employee of the railway company supervised the payments that were made by the bank, to the extent of seeing that the funds provided for went to the payment of labor performed and material used on the work, it was all done in carry-

ing out and completing the contract of the building company. The deviations from the provisions of the contract as to the manner of making payments related to matters intended mainly for the protection of the railway company, and as they did not result in injury to the guaranty company, they did not operate to release that company from liability. It is essentially an insurance company and the ordinary rules applicable to sureties do not apply. (*Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544; *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563.)

In regard to the stipulation for the retention of ten per cent of the monthly estimates it may be said that the testimony shows that $5604 of the amount retained was paid out while another surety company was responsible for the performance of the contract and before the defendant guaranty company became surety for the contractor. The other surety company consented that payments of the retained funds might be made. The defendant company refused consent to the payment of the retained funds upon the alleged ground that the amounts due from the railway company were sufficient to meet the obligations of the building company. The defendant company calls attention to *The Y. M. C. A. v. Ritter*, 90 Kan. 332, 133 Pac. 894, and to another decision in the same case (92 Kan. 467, 140 Pac. 892), as an authority that the failure to retain the percentage of the estimates constituted a breach of the contract. In that case the controversy was between the obligee of the bond and the surety, and it was determined that the failure to retain the prescribed percentage of the estimate was a breach of the condition of the bond; but even as between them, it was held it would not operate to relieve the surety company from liability unless the latter suffered some injury from the failure, and that in any event the company could defend against the liability only to the extent that it had been injured. Here the trial court found upon sufficient testimony that the guaranty company had suffered no injury. (*Republic County v. Guaranty Co.*, 96 Kan. 255, 258, 150 Pac. 590.)

Besides, the controversy here is between those who furnished labor and material and the guaranty company, upon a statutory bond expressly given for the protection of laborers and materialmen and upon which they are authorized to sue,

regardless of what action may be taken by the obligee in the bond. (Gen. Stat. 1909, §§ 7006, 7007.) The bond serves the double purpose of securing the performance of the contract and the payment of claims for labor and material employed in the work. Laborers and materialmen have rights under this statutory bond independent of the obligee. The bond is required by the legislature for the benefit of laborers and those who furnish material for railroad construction, and no agreement between the railway company and the contractor or between him and the guaranty company can affect the rights of laborers and materialmen to recover upon the bond given for their protection. Modifications of the contract or failures to observe some of its provisions, which might be good defenses as between the guaranty company and the obligee in the bond, will not relieve the guaranty company from liability upon the bond to laborers and materialmen.

In *Griffith v. Stucker*, 91 Kan. 47, 136 Pac. 937, it was held that a statutory bond given in a contract for a public improvement between a city and a contractor was intended for the protection of laborers and materialmen who contributed to the work, and that even subcontractors, laborers and materialmen might resort to the bond for the satisfaction of their claims. It was held that the bond was given pursuant to a statutory duty for the protection of laborers and materialmen, and that that statute was analogous to the one enacted to protect laborers and others who aid in the construction of railroads, which is the one under which the bond in this case was given.

In *Surety Co. v. Lime Co.*, 76 Kan. 914, 92 Pac. 1111, the stipulations between the city and the contractor were such as to render the contract absolutely void, but it was decided that the illegal agreements of these parties did not prevent the lime company which innocently furnished material for the work from recovering from the surety company for the material sold on the security of the bond. In that bond, as here, the surety agreed to pay all claims for labor and material.

In an Iowa case, a contractor gave a surety bond for the faithful performance of a building contract and also to pay all claims for labor and material furnished for the work. There was a contention that the surety was released from liability

because the owner had not observed the provisions of the contract in several particulars. It was held that however the failure of the owner might affect his rights against the surety company it could not release the company from liability for the material used in the building. It was said:

"Even if the surety should be held released, on this account, as to the owner, it would not follow that it is also released as to the claims of the subcontractors. The bond being given for the benefit of the latter as well as the former, their right of action can not be affected by an act for which they are in no manner responsible. Their right is not derived from, nor held under, the owner of the building, but is an independent right, of which they are not to be deprived save by their own act or default." (*Lumber Co. v. Peterson & Sampson*, 124 Iowa, 599, 615.)

In Indiana a statute was enacted which is substantially similar to that which was under consideration in *Griffith v. Stucker*, supra, and the court, after referring to the loss often sustained by laborers and materialmen through the failure of irresponsible contractors, said:

"To remedy this evil the statute was passed requiring such contractors to give a good and sufficient bond securing them in the payment for such labor and material. The bond is required for their benefit and security. To permit the contractor and the board of commissioners, by any act of theirs, without the consent of such laborers or materialmen, to destroy such security would be the grossest injustice." (*Conn et al. v. The State, ex rel. Stutsman*, 125 Ind. 514, 519.)

In *Dewey et al. v. The State, ex rel. McCollum et al.*, 91 Ind. 173, it was held that a surety bond like the one in question was intended to accomplish two things:

"1. The faithful performance and execution of the work [by the contractor]; and 2, the prompt payment by the contractor of all debts incurred by him in the prosecution of the work, including labor, materials furnished, and for boarding the laborers thereon. As to the second of these purposes, for any breach thereof by the contractor, the right of action is in the laborer, the materialman, or the person boarding the laborers, and can not be defeated by any act done, or omitted to be done, by the county board." (Syl. ¶ 3.)

It was expressly held in *U. S. Fidelity, etc., Co. v. American Blower Co.*, 41 Ind. App. 620, that the failure of the owner or obligee in the bond to retain a percentage of the contract price until the completion of the work will not release the surety company from liability on the building contract to materialmen.

A like ruling was made by the United States circuit court in an action on a statutory bond which contained the condition that the contractor should "'pay for all material and labor entering into or employed in the construction of said building.'" (*United States Fidelity & Guaranty Co. v. Omaha Bldg. & C. Co.*, 116 Fed. 145, syl.) The contract provided that the owner should retain a percentage of the estimates upon which payments were made as the work progressed, but this was not done. It was held that under the bond there was an obligation to the laborer and materialman which the statute required to be inserted in the bond for their protection, and that their rights were unaffected by the acts of the owner and contractor, and that they could not be defeated unless they had done something to the injury of the surety company or to the prejudice of their own rights under the bond.

Other authorities of the same import are *United States v. National Surety Co.*, 92 Fed. 549; *Chaffee v. United States Fidelity & Guaranty Co.*, 128 Fed. 918; *Ætna Indemnity Co. v. Indianapolis, etc., Fuel Co.*, 178 Ind. 70; *School District, ex rel. v. Livers*, 147 Mo. 580; *Kansas City, ex rel. v. Surety Co.*, 196 Mo. 281; *Doll v. Crume*, 41 Neb. 655; *Kaufmann v. Cooper*, 46 Neb. 644; *King v. Murphy*, 49 Neb. 670.

This rule applies to the other defenses urged by the defendant as well as to the failure to retain a percentage of the monthly estimates. Whatever defenses the guaranty company might have in an action between itself and the railway company, none of the defenses advanced by it are available as against the plaintiff for the labor and material furnished by it on the faith of the bond given for the protection of those furnishing labor and material in the railroad construction.

The judgment of the district court is affirmed.