No. 21,296.

THE COLONY STATE BANK, *Appellee*, v. W. T. WATSON, THE
BANKERS DEPOSIT GUARANTY AND SURETY COMPANY, *Appellants* et al.

SYLLABUS BY THE COURT.

1. DAMAGES—*Wrongful Use of Plaintiff's Money—Findings Conclusive.*
The issues presented to the jury having been found in favor of the
plaintiff on sufficient evidence, the verdict must stand.

2. INDEMNITY BOND—*Liability of Surety Company for Indemnity.* The
lien, if any, of the plaintiff bank on the stock of one of the defendants
interposed no obstacle to its looking to the surety-bond company for
indemnity.

3. SAME—*Notice to Surety of Plaintiff's Claim for Indemnity.* A pro-
vision of the bond that notice should be given on becoming aware of
any act which might be made the basis of a claim under such bond,
held not to preclude the plaintiff from maintaining this action under
the circumstances shown by the evidence and stated in the opinion.

4. SAME—*Limitation of ·Time to File Claims—Provision Valid.* The
provision in the bond that no claim should be paid unless filed within
six months from its expiration or cancellation constituted a defense
to the action against the company.

5. SAME—*Knowledge Not Imputable to Bank.* Knowledge which a direc-
tor of a bank might, but did not, have, touching the account involved
herein, did not bind the bank.

6. DAMAGES—*Verdict Not Excessive.* The evidence examined, and found
not to justify the claim that the verdict is excessive.

Appeal from Anderson district court; CHARLES A. SMART,
judge. Opinion filed January 11, 1919. Affirmed in part and
reversed in part.

*G. R. Gard,* of Iola, *Charles W. Garrison,* of Garnett, and
*J. T. Pringle,* of Burlingame, for the appellants.

*J. K. Bowman,* and *N. L. Bowman,* both of Garnett, for the
appellee.

The opinion of the court was delivered by

WEST, J.: This action was to recover damages for the al-
leged wrongful use of funds of the plaintiff bank in making a·
loan to the defendant Brown.

It was alleged, in substance, that while Watson was a stockholder, director, cashier and manager of the plaintiff bank, he wrongfully entered into an arrangement with Brown to use funds of the bank to purchase hay, Brown being financially worthless; that the venture resulted in a loss to Watson and Brown of $1,500, to cover which it was alleged that they made a note for that sum to the order of the plaintiff, which represented the balance due the bank from them for money that had been wrongfully, unlawfully and dishonestly used by them jointly as indicated. It was sought to recover from the surety company also under its bond guaranteeing the honesty of the defendant Watson.

It is undisputed that during the time covered by the hay transactions, Watson was cashier and managing officer of the plaintiff bank; that Brown did carry on a considerable hay business, buying with the aid and assistance of Watson, resulting in a loss substantially as alleged. It is the contention of the plaintiff that Watson and Brown went into the hay business as a joint adventure or partnership; that the loss was the result of such relationship and dealing; that the devotion of the bank's funds to these transactions was without the knowledge of the bank and was by Watson concealed from it; and that Watson acted in bad faith in the matter.

Without going into the details or quoting from the evidence, it suffices to say that these assertions were vigorously denied by Mr. Watson, and on the two questions—the alleged partnership and alleged bad faith—there was evidence on which the jury might with sufficient support have found either way. They did find, however, in favor of the plaintiff on both these questions, and there is in the record such basis for those findings that we cannot, under the familiar rule, disturb them.

It is also claimed that the verdict, which was for $1,399.26, is excessive. This also is a matter on which the testimony was conflicting. It is urged that the balance on hand for the hay account of $115.98 at the time of the trial should have been credited on the note, but it is also argued that a credit of $200 which was made on the hay account consisted of a promissory note to which Watson signed Brown's name, and which has never been paid. It is asserted and denied that the parties agreed on the amount of the verdict in case the plaintiff should

recover, but at any rate the trial court gave much attention to the motion for a new trial, and appeared to feel satisfied with the verdict as it is, and we see no sufficient reason for changing it.

The issues as between the plaintiff and the defendants, Watson and Brown, were submitted to a jury, but the alleged liability on the bond was tried by the court, and judgment was rendered for the plaintiff. It is contended that this separation of the issues was prejudicial to the surety company, but we are inclined to the view that the trial by the court after the jury had been discharged was favorable, rather than unfavorable, to the company. At any rate, no error in this respect is apparent from the record.

It is contended that as Watson, by himself and his relatives, held 43 shares of the stock of the bank, the plaintiff should have secured itself by its lien thereon, and should not call upon this defendant to reimburse it for its loss. But it must be borne in mind that before the alleged liability of Watson arising out of the hay deal was discovered by the bank, Watson sold his stock, and the surety company was paid for its contract of indemnity, and cannot ask the bank to stand aside until it recoups from some other source.

Complaint is made about the special findings, and the sufficiency of the evidence in the jury part of the trial, but we can discover no merit in this complaint.

It is argued that as Mr. Bishop was a director and employee of the bank, and had or should have had knowledge of the hay transactions appearing upon the books, the bank was bound thereby. But the testimony fails to show that Mr. Bishop had much to do with the management of the bank, or knew very much about these transactions, Mr. Watson being the alert and active man who was steering its financial course.

It is urged that the bond contained a provision that no claim thereunder should be payable if filed with the company after six months from the expiration or cancellation of the bond.

The terms of the bond on this point are:

"Now therefore  .  .  .  it is hereby agreed that subject to the obligations imposed on the employer by this bond and the warranties aforesaid, which are part hereof,  .  .  .  the company shall, at the expiration of three months next after proof of a pecuniary loss, as hereinafter men-

tioned, has been given to the company, reimburse the employer to the extent of the sum of Five Thousand Dollars, and no further, for such pecuniary loss of moneys, securities, or other personal property belonging to the employer, as the employer shall have sustained by any dishonest act or acts committed by the employee in the performance of the duties of the office or position in the service of the employer hereinbefore referred to, or of such other office or position as the employee may be subsequently appointed to or called upon to fill by the employer as such duties have been, or may hereafter be stated in writing by the employer to the company, and occurring during the continuance of this bond, and discovered at any time within six months after the expiration or cancellation of this bond, or in case of the death, resignation or removal of the employee prior to the expiration or cancellation of the bond within six months after such death, resignation or removal. . . . Provided, that no claim shall be payable hereunder that shall be filed with the company after the period of six months from the expiration or cancellation of this bond."

This is the kind of contract the parties made for themselves, and we cannot change it.

It has been held that this six-months provision does not amount to a limitation as to the time of suit. (14 R. C. L. § 580.) In *Guarantee Co. v. Mechanics' Sav. Bank & Trust Co.,* 80 Fed. 766, it was held by Justices Taft, Lurton and Hammond, that—

"A provision in the bond limiting the risk to a loss sustained and discovered during the continuance of the bond, and within six months from the employee ceasing to be in the said service, does not bind the company for any loss discovered more than six months after the expiration of the bond, whether the employee had then quitted the service of teller or not." (syl. ¶ 12.)

We cannot regard the six-months provision in this bond as governed by the same rule applicable in *Republic County v. Guaranty Co.,* 96 Kan. 255, 150 Pac. 590; *McClure v. Construction Co.,* 97 Kan. 695, 156 Pac. 692; or *Asphalt Co. v. Building Co.,* 99 Kan. 567, 162 Pac. 299. Hence, we are constrained to hold that the company is not liable, and the judgment as to it is reversed. This ruling makes it unnecessary to notice certain other complaints made by the bonding company. The judgment as to the defendant Watson is affirmed.