No. 27,347.

The American Indemnity Company, *Appellant*, v. John H. Peak and W. B. Stingley, *Appellees*.

### SYLLABUS BY THE COURT.

1. Indemnity—*Rights of Indemnitor as Against Principal—Limitations.* An indemnity company was compelled as surety to respond on a bond because of defects in paving constructed by its principal. In an action by the indemnity company to recoup from certain officers and stockholders of its principal, who in a written application for the bond had bound themselves to save the indemnity company from all losses, costs and charges by virtue thereof, the record considered, and *held*, the action was not barred either by the five- or the three-year statute of limitations.

2. Same—*Variance Between Application and Bond.* And further, the record shows no prejudice to defendants because of a variation between the application for the bond signed by them, and the bond executed by plaintiff in accordance therewith.

3. Same—*Evidence.* The evidence considered and held sufficient to require a judgment for the plaintiff.

Appeal from Riley district court; Fred R. Smith, judge. Opinion filed May 7, 1927. Reversed.

*R. P. Evans* and *George Clammer*, both of Manhattan, for the appellant.
*A. E. Crane, B. F. Messick* and *A. H. Crane*, all of Topeka, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The plaintiff as surety for the National Paving Company of Oklahoma City executed a maintenance bond guaranteeing certain paving. The bond was executed on the application of the defendants, who were the officers and chief stockholders of the

Corporations, 14a C. J. p. 100 n. 92 new. Indemnity, 31 C. J. pp. 459 n. 24, 465 n. 76, 470 n. 56.

paving company. Having been compelled to pay the city because of defects in the paving, plaintiff brought this action to recoup its damages from defendants. Plaintiff was defeated and appeals.

The plaintiff alleged, in substance, that it was a Texas corporation engaged in the general business of acting as surety for persons and corporations engaged in constructing paving and similar work; that the defendants were officers and principal stockholders of the National Paving Company, an Oklahoma corporation; Stingley, president, and Peak, vice president; that the paving company, under the active management of the defendants, became and was the successful bidder for certain paving in Oklahoma City, requiring a bond of $38,758, conditioned upon its paying for all work and materials used in the performance of its contract; that plaintiff at the especial instance and request of the paving company and as a result of the personal solicitation of the defendants became the surety upon such bond; that as a further condition pertaining to the letting of the paving contract, the paving company was required to execute a maintenance bond guaranteeing the maintenance of the paving for a period of five years after completion and acceptance of the work; that defendants being fully conversant with all the requirements of the city, after extensive negotiations procured the plaintiff to execute a maintenance bond in the sum of $38,758, guaranteeing the maintenance of the paving for a period of five years; that such bond was eventually executed by plaintiff upon a formal written application by defendants; that the application for such maintenance bond was executed by the paving company and by the defendants as sureties; that thereafter, as additional security to plaintiff for the execution of the maintenance bond and other bonds, the plaintiff required the paving company to deposit $3,000 in the American National Bank, and a certificate thereof to be assigned to the plaintiff. Provisions of the application and bond are set out in the petition in much detail. It is alleged that the paving company duly entered upon the work of constructing the paving, which was completed and accepted by the city August 21, 1917; that the paving company failed to pay for material and labor provided in its contract in accordance with the terms of the bond first mentioned, as a result of which plaintiff was compelled to pay a judgment for the paving company of $10,588; that thereafter, for the purpose of reimbursement, the plaintiff brought suit against the paving company and the

American National Bank to recover the value of the certificate of deposit; that the paving company joined in the prayer of plaintiff, as a result of which the certificate of deposit was collected in the sum of $4,050 and applied by plaintiff upon the indebtedness of the paving company. It was further alleged that within less than 18 months after completion of the paving it became badly cracked, which condition increased to crumbling until by January, 1921, the entire pavement, with some exceptions, became and was impassable and useless; that thereafter the city of Oklahoma City commenced an action against the paving company and plaintiff to recover the sum of $38,758; that defendants were notified of such suit and importuned to defend it, but failed to do so; that plaintiff defended the action but was compelled to respond in satisfaction of a judgment against it of $8,500; that attorney's fees and other expenses of such litigation brought the amount in all to $13,300, for which amount plaintiff prayed judgment. Copies of the various instruments, including the application and bond, were attached as exhibits to plaintff's petition.

The defendants answered denying generally the allegations of the petition. They pleaded also the five-year statute of limitations, and the three-year statute of limitations. For a further defense, they alleged that plaintiff took possession of a plant used in the laying of hard-surface roads, of wagons, motors, etc., of a total value of $19,500, which more than satisfied the claims, if any, of plaintiff against the defendants and the National Paving Company. They also alleged that plaintiff had recovered the sum of $4,050 on the certificate of deposit mentioned in plaintiff's petition.

The plaintiff in reply denied the allegations of new matter set up in the answer of the defendants and further alleged that in a certain attachment action brought by the plaintiff against the National Paving Company, the paving plant and equipment referred to by the defendant in its answer had been seized, appraised and sold and that there was realized therefrom approximately the sum of only $250.

Trial was to the court; evidence to sustain the allegations of both parties; general judgment for defendants; no special findings.

The plaintiff contends that the judgment was contrary to the evidence. Defendants contend that the action is barred by the five- and three-year statutes of limitations; that there was a variation

American Indemnity Co. v. Peak.

between the application signed by them and the bond executed by plaintiff; that plaintiff received credits (money and property) from defendants in excess of the amounts claimed.

In support of the contention that the action was barred by the statute of limitations, the defendants say that the paving was completed Thanksgiving day in November, 1916; that the city made no demands for repairs under the bond until December 8, 1921, more than five years after completion of the work. The petition alleged and there was evidence in support of the allegation that the paving began to crack within eighteen months after it was completed, and continued to grow worse until, with some exceptions, the entire pavement had become useless within five years after its completion. The city made due demand upon the plaintiff within time to compel compliance with the provisions of the bond. Plaintiff's cause of action against the defendants accrued when it paid the judgment in favor of the city, April 21, 1924. Action was filed against defendants in August, 1924. Neither the five- nor the three-year statute of limitations had run against plaintiff's cause of action, and defendants' contention in this regard, therefore, cannot be sustained.

With respect to variations between the application and the bond it is contended:

"That the application did not specify the amount of indemnity to be named in the bond and that when a bond of 100 per cent of the contract price was executed, it therefore was not in accordance with the application; that the application called for a maintenance bond for five years from the completion of the paving while the bond itself called for five years from completion and acceptance; that the application in no way contemplated the provision in the bond itself, whereby the city engineer and commissioners possessed the power of determining the amount necessary to place the pavement in proper condition to stand up."

It may be noted that the city, in its requirements expressed in the advertisement for bidders, required a maintenance bond for the full amount of the contract price for five years from the date of the completion and acceptance of the improvements. The specifications adopted by the city, and contemplated by proposal of the National Paving Company and the contract of that company with the city, provided the procedure in case of failure to make necessary repairs. It provided that the contractor guarantee the work for five years from completion and final acceptance of the paving, also for the giving of the maintenance bond for one hundred per cent of the contract price.

The maintenance bond was approved on June 20, 1916. There was testimony showing that one of the chief difficulties encountered by the National Paving Company was securing a maintenance bond for one hundred per cent of the contract price. This difficulty caused considerable delay, and it is perfectly obvious that these matters were necessarily discussed with the defendants. There was testimony that the contract, bond, maintenance bond, contract covering the work, description, specifications, etc., were all bound together in a folder; that financial statements of the defendants were procured and submitted to plaintiff; that the application was first submitted to the plaintiff without the personal signatures of Peak and Stingley and was returned for the purpose of obtaining their signatures. From all the facts and circumstances it is perfectly apparent the defendants were familiar with the conditions and requirements of the bond. While they, as officers, were acting for the paving company, their knowledge of such conditions as officials of the company was likewise knowledge to them as individuals. (4 Fletcher's Cyclopedia of Corporations, 3505.) Furthermore, there is nothing in the record showing that the claimed variation or departure of the bond from the provisions of the application in any way changed the position of the parties or caused any loss to the defendants. (See *Republic County v. Guarantee Co.*, 96 Kan. 255, 150 Pac. 590; *McClure v. Construction Co.*, 97 Kan. 695, 156 Pac. 692; *Asphalt Co. v. Building Co.*, 99 Kan. 567, 162 Pac. 299.)

Respecting the contention of the defendants that plaintiff has received credits sufficient to relieve defendants of liability in this action, the record is not entirely clear. There was evidence that the plaintiff was compelled on its contractor's bond to pay a judgment and attorney's fees on behalf of the National Paving Company amounting to $11,149. As partial compensation for this outlay, plaintiff received $4,050 from the certificate of deposit in the American National Bank. This left a balance due plaintiff at that time of something over $7,000. The plaintiff filed an attachment action against the National Paving Company and attached the plant and equipment that had been used in the construction of the pavement. Various questions are raised by the defendants as to the validity of that action. It is claimed that the entire proceedings were void and that the action of Attorney A. J. Decker in entering appearance therein of the National Paving Company was without any authority.

American Indemnity Co. v. Peak.

It is contended, also, that the paving-plant equipment was owned by the defendants individually. These various contentions need not be decided at this time. In the attachment action, a report filed by the appraisers showed that the value of the paving plant and equipment was $2,000. Also a return of the sheriff set forth the seizure of the plant and notice of the sale of same for $500. Against this, there was the testimony of one of the defendants that the plant and equipment in 1918 would have brought $8,500 for junk; that the total value of the plant was in the neighborhood of $2,000. The $4,050 received as proceeds from the certificate of deposit in the American National Bank having been applied to compensate plaintiff for what it paid on the contractor's bond, cannot be again applied in the present action. The plaintiff's claim for $8,500 appears to be a valid one, as does the attorney's fees, amounting altogether to $4,800, making a total of $13,300. Even if the trial court had found that the paving plant had been appropriated by plaintiff, and its value $12,000, it is clear that there should have been judgment for plaintiff. A contention by the defendants that attorney's fees are not a proper charge cannot be sustained. The application executed by the defendants stipulated that defendants would pay "any and all damages, losses, costs, charges and expenses of whatsoever kind or nature including counsel and attorney's fees whether incurred as retainer or salary or otherwise," etc.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.