RGK, INC. v. UNITED STATES FIDELITY AND GUARANTY COMPANY, CECIL'S, INC., AND FAIRWAY PROPERTIES, A LIMITED PARTNERSHIP

No. 111

(Filed 13 June 1977)

1. Principal and Surety § 10— private construction project — action on payment bond — necessity for attachment of prime contract

A materialman who sues on a prime contractor's payment bond is not required to set forth in his complaint, by attachment or otherwise, the contract between the contractor and the owner in order to resist successfully a motion to dismiss.

RGK, Inc. v. Guaranty Co.

2. **Principal and Surety § 10— private construction project — action on payment bond — sufficiency of complaint**

Plaintiff subcontractor's complaint was sufficient to state a claim for relief against the surety on the prime contractor's payment bond without the attachment of the prime contract to the complaint where the complaint alleged: the prime contractor and the owner contracted for the construction of an apartment complex on the owner's land; the prime contractor and the surety executed a payment bond naming the owner as obligee for the use and benefit of claimants, including plaintiff by definition, whereby they undertook that the prime contractor would promptly pay all claimants for labor and material used or reasonably required for use in the performance of the prime contract; pursuant to two other attached contracts between the plaintiff, the prime contractor, and the owner, the plaintiff performed clearing and grading work and installed storm sewers upon the owner's property; the prime contractor and owner have failed and refused to pay for such work; the labor and materials furnished by plaintiff were used or reasonably required for use in the performance of the prime contract; by reason of this default by the prime contractor, the surety is indebted to plaintiff in a specified amount under provisions of the payment bond; and plaintiff notified the surety of the prime contractor's default and made demand upon it for the performance of its obligation under the bond.

3. **Principal and Surety § 10— action on contractor's payment bond — effect of default of owner**

An assertion that the owner defaulted in payments to the prime contractor of a private construction project does not, as a matter of law, bar the right of a subcontractor which furnished labor and materials for the project to recover from the surety upon a bond securing payment by the prime contractor of materialmen and laborers.

4. **Principal and Surety § 10— private construction bond — materialman as third-party beneficiary**

Plaintiff materialman was a third-party beneficiary of the prime contractor's payment bond and was thus entitled to maintain an action thereon in its own name against the surety on the bond if it alleged a breach of the condition of the bond.

5. **Principal and Surety § 10— private construction bond — consideration of prime contract**

Where the prime contract was incorporated by reference into the prime contractor's payment bond, the provisions of the prime contract must be considered in construing any ambiguous language in the condition of the bond itself.

6. **Principal and Surety § 1— compensated surety — construction of contract**

The contract of a compensated surety is to be interpreted liberally in the interest of the promisee and beneficiaries rather than strictly in favor of the surety.

Justice EXUM concurring in result.

Chief Justice SHARP concurs in concurring opinion.

ON *certiorari* to the Court of Appeals to review its decision, reported in 31 N.C. App. 708, 230 S.E. 2d 600.

The matter was heard in the Superior Court before *McLelland, J.,* upon the motion of the United States Fidelity & Guaranty Company, hereinafter called USF&G, under Rule 12(b)(6), that the plaintiff's action against it be dismissed for failure of the complaint to state a claim upon which relief could be granted against USF&G. Treating this as a motion for judgment on the pleadings under Rule 12(c), McLelland, J., granted the motion, found there was no just reason for delay and granted final judgment for USF&G so as to permit an immediate appeal. The Court of Appeals reversed.

The material allegations of the amended complaint, summarized and renumbered, are as follows:

(1) RGK entered into two similar contracts with Fairway and Cecil's which contracts are attached to and made part of the complaint. By these contracts, RGK promised to clear and grade and to install storm sewers upon a described tract of land owned by Fairway, upon which tract Fairway and Cecil's had entered into a third contract (not attached to the complaint and not set forth in the record on this appeal) for the construction of an apartment complex. By the contracts so made by it with the said two defendants, RGK promised to furnish "labor, equipment and supervision" for such clearing, grading and storm sewer construction and Fairway and Cecil's promised to pay RGK specified amounts for the performance of such work, payments to be made by them monthly as the work progressed, pursuant to estimates, and final payment to be made within 30 days after completion. RGK further promised in these contracts "to turn said work over to Cecil's, Inc., and Fairway Properties in good condition, free and clear from all claims, encumbrances, and liens of any person, firm or corporation other than RGK growing out of the performance of" such contracts.

(2) On 21 March 1974, Cecil's, as principal, and USF&G, as surety, entered into a "labor and material payment bond" the provisions of which, material to this appeal, are:

"KNOW ALL MEN BY THESE PRESENTS:

"That Cecil's, Inc., * * * as Principal, * * * and United States Fidelity & Guaranty Company, * * * as Surety, * * * are held and firmly bound unto Fairway Properties, * * *

as Obilgee [sic], hereinafter called Owner, for the use and benefit of claimants as hereinbelow defined in the amount of Two Million, Six Hundred Forty-eight Thousand, Two Hundred and Ninety and No/100—Dollars ($2,648,-290.00**) for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"WHEREAS, Principal has by written agreement dated December 4, 1974, entered into a contract with Owner for Construction of The Wellington Apartments, Burlington, North Carolina, in accordance with drawings and specifications prepared by James D. Miller, AIA, which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

"(1) A claimant is defined as one having a direct contract with the Principal or with a sub-contractor of the Principal for labor, material, or both used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

"(2) The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit. * * * "

(3) Beginning 1 March 1974 and continuing through 8 May 1975, RGK furnished materials and labor pursuant to its said contracts with Fairway and Cecil's and continued the performance of such contracts, the labor and materials so furnished by it being "used or reasonably required for use in the performance of the contract between Cecil's, Inc., and Fairway Properties" for the construction of the said apartment complex.

(4) Cecil's and Fairway have failed and refused to pay RGK for its performance under its said contracts with them and Cecil's has failed and refused to pay the plaintiff "for the labor and/or materials furnished for use in the construction of the Wellington Apartments pursuant to the December 4, 1974 contract between Cecil's, Inc. and Fairway Properties." By reason of such default by Cecil's, USF&G is indebted and obligated under the provisions of the said bond to the plaintiff in the amount of $16,294.60 with interest.

(5) By letter dated 6 November 1975, the plaintiff notified USF&G of Cecil's default under the terms of the bond and made demand upon it for performance of its obligation as surety under such bond.

The prayer of the complaint is for the recovery from the defendants, jointly and severally, of $16,294.60 with interest and costs and that the said amount be declared a lien upon the property and for an order directing the sale of such property for the satisfaction of such lien.

This action was originally instituted 10 July 1975 against Cecil's and Fairway only. On 13 August 1975, by order of the Bankruptcy Judge of the United States District Court for the Middle District of North Carolina all persons were enjoined from instituting or taking further steps in any proceedings or suits against Fairway or its properties, bankruptcy proceedings having been instituted against Fairway pursuant to Chapter XII of the Bankruptcy Act.

Cecil's filed its answer to the original complaint admitting the making of the contracts with RGK and admitting that the plaintiff furnish certain labor and materials to the described tract of land but demanding strict proof as to the amount owed by Cecil's to RGK and asserting a counterclaim against RGK, in an unspecified amount, for damage sustained by Cecil's as the result of alleged delay by RGK in its performance of the said

contracts and as the result of RGK's performance thereof in an "unworkmanlike manner." To this counterclaim RGK filed its reply, denying any such delay or improper performance by it.

USF&G was made a party to the action by the plaintiff's amended complaint on 11 December 1975.

Cecil's and USF&G filed a joint answer to the amended complaint, wherein Cecil's reaffirmed its defenses set forth in its original answer and USF&G adopted these. The answer to the amended complaint admitted the execution of the bond above mentioned and further admitted that "the labor and/or materials furnished by the plaintiff, as alleged in the original complaint, were used or reasonably required for use in the performance of the contract between Cecil's, Inc., and Fairway Properties * * * for the construction of" the above mentioned apartment complex. It denied that anything was due and owing RGK from either Cecil's or Fairway under the said bond.

*Vernon, Vernon & Wooten, P.A., by John H. Vernon III for RGK, Inc., James H. McAdams, d/b/a McAdams Masonry and General Electric Company.*

*Brooks, Pierce, McLendon, Humphrey and Leonard by L. P. McLendon, Jr., and M. Daniel McGinn for USF&G.*

LAKE, Justice.

The sole question before us on this appeal is the correctness of the judgment on the pleadings in favor of the defendant, the alleged basis of which is the failure of the complaint to state a claim on which relief may be granted. Thus, we are not concerned here with whether the plaintiff, if permitted to proceed with trial of this action, can hit a home run or will strike out but only with whether, on the facts alleged, he is entitled to come to bat. In our opinion he is and, therefore, the judgment of the Court of Appeals should be affirmed.

Rule 8 of the Rules of Civil Procedure, G.S. 1A-1, provides:

"*General rules of pleadings.*

"(a) *Claims for relief.*—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim, shall contain

"(1) A short and plain statement of the claim sufficiently particular to give the court and the parties

notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and

"(2) A demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

\*    \*    \*

"(e) *Pleading to be concise and direct; consistency.*—

"(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

\*    \*    \*

"(f) *Construction of pleadings.*—All pleadings shall be so construed as to do substantial justice."

"A motion for judgment on the pleadings 'is not favored by the courts; pleadings alleged to state no cause of action or defense will be liberally construed in favor of the pleader.' 51 Am. Jur., Pleadings, § 336." *Powell v. Powell,* 271 N.C. 420, 156 S.E. 2d 691 (1967); *Edwards v. Edwards,* 261 N.C. 445, 135 S.E. 2d 18 (1964). In the leading case on this question in this Court, we said that a motion to dismiss under Rule 12(b) (6) for failure to state a claim upon which relief can be granted is the modern equivalent of a demurrer under our former Code of Civil Procedure. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). We there said, "[W]e conclude that the legislature intended to relax somewhat the strict requirements of detailed *fact* pleading and to adopt the concept of 'notice pleading.' \* \* \* Under the 'notice theory of pleading' a statement of claim is adequate if it gives sufficient notice of the claim asserted 'to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought." We also said: "A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial discovery—to get any additional information he may need to prepare for trial." Nevertheless, the plaintiff's complaint must allege enough "to give the substantive elements of his claim." 5 Wake Forest Intra. L. Rev. 70, 73; *Sutton v. Duke,*

*supra.* USF&G contends the complaint in this action does not do this.

In *Cantrell v. Woodhill Enterprises, Inc.,* 273 N.C. 490, 160 S.E. 2d 476 (1968), we said, "In an action for breach of a building or construction contract—just as in any other contract case—the complaint must allege the existence of a contract between plaintiff and defendant, the specific provisions breached, *the facts constituting the breach,* and the amount of damages resulting to plaintiff from such breach." In *Wilmington v. Schutt,* 228 N.C. 285, 45 S.E. 2d 364 (1947), speaking through Justice Barnhill, later Chief Justice, this Court said, omitting citations:

> "There is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit. He must allege in a plain and concise manner the material, ultimate facts which constitute his cause of action. The production of evidence to support the allegations thus made may and should await the trial."

In *Sossamon v. Cemetery, Inc.,* 212 N.C. 535, 193 S.E. 720 (1937), speaking through Chief Justice Stacy, this Court said, omitting citations:

> "The question for decision is whether it is mandatory in an action on a written contract to make the entire writing a part of the complaint. The answer is 'No,' especially where the part omitted from the complaint, as in the instant case, is in the possession of the defendant. An allegation containing the substance of the agreement, as in the present complaint, will suffice as against a demurrer."

This principle of pleading, well established under the former Code, is not specifically set forth in the present Rules of Civil Procedure, G.S. Chapter 1A, but it is implicit in the present requirement of Rule 8 that the plaintiff's claim for relief be set forth in "a short and plain statement of the claim" and that "each averment of a pleading shall be simple, concise, and direct."

[1] Relying upon *Builders Corp. v. Casualty Co.,* 236 N.C. 513, 73 S.E. 2d 155 (1952), which we shall discuss below, the defendant contends that the complaint is deficient because the bond,

on which the plaintiff sues, a copy of which is attached to and made part of the complaint, expressly incorporates into itself, by reference, the construction contract between Cecil's and Fairway and this contract is not attached to or set forth in the complaint. It is a matter of common knowledge that such contracts, themselves, usually incorporate, by reference, the specifications and plans, including blueprints, of the architect pursuant to which the prime contractor promises to build the structure upon the land of the owner. To hold that, in order to resist successfully a motion to dismiss, a materialman, who sues on a contractor's payment bond, must set forth in his complaint, by attachment or otherwise, the contract between the builder and the owner, including all plans and specifications for the construction of an apartment complex, would make a farce of the requirement of the present rules that the plaintiff state his claim in a "short and plain statement * * * simple, concise, and direct." If the complaint, sufficient upon its face to "give the court and the parties notice of the transactions * * * intended to be proved showing that the pleader is entitled to relief," does not correctly allege the contractual undertaking of the defendant, it is a simple matter for the defendant, in his answer, to deny the making of the alleged contract and put the plaintiff to his proof thereof, whether the supposed inaccuracy be due to some provision in the document incorporated by reference into the contract sued upon or otherwise.

[2]   This complaint alleges in substance: Cecil's and Fairway contracted for the construction of an apartment complex on land owned by Fairway; Cecil's, as principal, and USF&G, as surety, executed a payment bond naming Fairway as obligee for the use and benefit of claimants, including the plaintiff by definition, whereby they undertook that Cecil's would promptly pay all claimants for labor and material used or reasonably required for use in the performance of the contract between Cecil's and Fairway; pursuant to two other contracts between the plaintiff, Cecil's and Fairway, which contracts, in full, are attached to and made part of the complaint, the plaintiff agreed to perform, and Cecil's and Fairway agreed to pay for, the clearing and grading of and the installation of storm sewers upon the said property owned by Fairway; the plaintiff performed the agreed work; Cecil's and Fairway have failed and refused to pay the plaintiff for such work; the labor and materials so furnished by the plaintiff were used or reasonably required for use in the

performance of the contract between Cecil's and Fairway for the construction of the apartment complex; by reason of this default by Cecil's, USF&G is indebted to the plaintiff, under the provisions of the said payment bond, in the amount of $16,294.60 with interest; the plaintiff notified USF&G of the default by Cecil's and made demand upon it for the performance of its said obligation as surety under the said bond. It would be difficult to imagine a simpler, plainer, more concise statement of the plaintiff's claim against USF&G. In what respect does it fall short of giving to the court and to the defendants notice of the transactions intended by the plaintiff to be proved or fail to give the substantive elements of its claim?

While the sufficiency of the complaint is to be determined upon the face of the complaint, we note that the answer filed jointly by Cecil's and USF&G admits the making by Cecil's and Fairway of the contracts with the plaintiff for the grading, clearing and storm sewer installation, admits the execution by Cecil's and by USF&G of the payment bond and admits that the labor and materials furnished by the plaintiff were used or reasonably required for use in the performance of the contract between Cecil's and Fairway for the construction of the apartment complex. Thus, it is admitted that the plainitff is a "claimant" as defined in the bond and, as such, "may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereof."

USF&G contends that, assuming everything alleged in the complaint is true and can be proved by the plaintiff, the plaintiff cannot recover from USF&G on its bond because the plaintiff has not alleged a default by Cecil's in its performance of its contract with Fairway for the construction of the apartment complex. In support of that contention, it relies upon *Builders Corp. v. Casualty Co., supra.* We find no merit whatever in this contention. That is not the contract, performance of which is secured by the bond on which plaintiff sues.

[3] It is asserted in the brief of USF&G in the Court of Appeals that, in the course of the construction of the apartment complex, some controversy arose between Fairway and Cecil's as to the quality of the work done by Cecil's, whereupon Fairway wrongfully cut off payments to Cecil's and Cecil's thereafter suspended work on the project. That is, USF&G asserts,

in its brief, that Fairway, not Cecil's broke the prime contract. However that may be, these circumstances are not referred to in any way in the pleadings, do not appear elsewhere in the record and cannot form a basis for the judgment of the Superior Court dismissing the action for failure of the complaint to state a claim for which relief can be granted, or a basis for granting a motion for judgment on the pleadings. The plaintiff has not alleged or admitted these supposed facts. We have no way of knowing, from the record before us, that any breach of the prime contract by either party thereto has occurred. If, however, USF&G's assertion in this respect be true, does that, as a matter of law, bar plaintiff's right to recover from USF&G upon its bond securing payment by Cecil's of materialmen and laborers? We think the answer must be, "No."

[4]   It is indisputable that, although Fairway is the named obligee in the payment bond, the plaintiff is a third-party beneficiary thereof and is thus entitled to maintain an action thereon in its own name against the surety if it alleges a breach of the condition of the bond. *Builders Corp. v. Casualty Co., supra; Bristol Steel & Iron Works v. Plank,* 163 Va. 819, 178 S.E. 58, 118 A.L.R. 50 (1935) ; Corbin on Contracts, § 798; Restatement of Contracts, §§ 136, 139; Restatement of Security, § 165; 17 Am. Jur. 2d, Contractor's Bonds, § 4. The obligation of the principal and the surety to the plaintiff materialman, upon their bond, is separate and independent from their obligation, if any, thereon to the owner, the named obligee.

Obviously, the surety (USF&G) is not liable to the third-party beneficiary (RGK) upon its bond unless there has been a breach *of the condition of the bond* by its principal (Cecil's). *Builders Corp. v. Casualty Co., supra.* It is equally obvious that the complaint in the present case alleges such breach of the condition of the bond by Cecil's, also a defendant in this action, in that it alleges Cecil's contracted directly with the plaintiff for the performance by the plaintiff of labor and the furnishing by the plaintiff of materials in connection with the construction of the apartment complex on the property of Fairway and Cecil's promised to pay the plaintiff the agreed price for such work, which payment Cecil's has not made. Plaintiff also alleges Fairway too was a party to its contracts and is liable to it, but that is immaterial to this appeal. Nothing else appearing, this is sufficient to impose liability upon the surety (USF&G) under its bond.

The condition of the bond on which plaintiff sues is not performance by Cecil's of its contract with Fairway, but is that Cecil's "shall promptly make payment to all claimants, as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the contract" between Cecil's and Fairway. It is acknowledged that the plaintiff's claim is for such labor and materials and that Cecil's has not paid the plaintiff therefor. Cecil's counterclaim for an unspecified amount is not material to this appeal. As Professor Corbin states in his treatise on Contracts, § 800: "Words of 'condition' are not words of 'promise' in form; but in the case of a penal bond they must be construed to be words of promise, inasmuch as the only express words of promise are those in which payment of the penal sum is promised. The alternative seems to be between enforcing the penalty and construing the words of condition as a promise and enforcing that. The courts have adopted the latter alternative, penalties being no longer collectible." Thus, the bond here in suit is a contract by Cecil's, as principal, and USF&G, as surety, that Cecil's will pay plaintiff for its work and if Cecil's does not, USF&G will.

[5, 6] The contract between Fairway and Cecil's is, by the terms of the bond, which in turn is made part of the complaint, incorporated into the bond. Thus, its provisions are to be considered in any question of construction of any ambiguous language in the condition of the bond itself. 17 Am. Jur. 2d, Contractor's Bonds, § 4; *Bristol Steel & Iron Works v. Plank, supra;* Corbin on Contracts, § 798, p. 168. However, it is well settled that the contract of a compensated surety, such as USF&G in this case, is to be interpreted liberally in the interest of the promisee and beneficiaries rather than strictly in favor of the surety. Corbin on Contracts, § 800, p. 176. There is no suggestion whatever in the record before us that there is anything in the contract between Cecil's and Fairway which tends to contradict or qualify the clear, direct, unambiguous undertaking to pay laborers and materialmen furnishing labor and materials for use in the completion of the construction for which Fairway and Cecil's contracted. Certainly, there is nothing in the allegations of the complaint which suggests such conflict or qualification. Of course, the contract between Faiway and Cecil's must be consulted to determine whether the work done and materials furnished by RGK were done and furnished for use in the performance of that contract and are,

therefore, within the coverage of the bond, but here USF&G. admits this.

USF&G, in its brief, contends: "If the owner is the party who has defaulted on the contract [i.e., the contract between Fairway and Cecil's] then the surety company is not liable since the surety company gives its bond to secure the performance of the general contractor, not that of the owner. * * * [T]he general contractor only agrees with the owner to pay the sub-contractors/suppliers that money which it obtains from the owner." It is a sufficient answer to this contention that "it is not so nominated in the bond." The bond plainly states that Cecil's and USF&G will pay claimants "for all labor and material used or reasonably required for use in the performance of the contract." USF&G's contention would transform this from a payment bond into a fidelity bond, making the surety liable only if Cecil's fails properly to apply the money it receives from Fairway. In its petition to this Court for a writ of certiorari, USF&G asserts:

"If a surety company is going to be liable not only when its principal has defaulted, but also when the other party to the contract [Fairway] has defaulted, then the consequences are obvious. The surety companies in North Carolina will either have to establish premium rates which reflect the fact that they are vouching for the performance by the general contractor *and* the owner on every construction project; *or* surety companies will simply refuse to issue payment bonds on a project, since, as a practical matter, they would not be able to sufficiently investigate the owners as well as the general contractors and would not be able to secure indemnification agreements from owners with whom they do not regularly deal."

This is simply not the case. Here, the surety has not undertaken that Fairway will pay Cecil's and Cecil's will apply what it so receives to the payment of those who supply Cecil's with labor and materials. It has promised unequivocally that Cecil's will pay those suppliers. The surety investigated the financial solvency of the general contractor, its principal, and when satisfied of his solvency, issued its bond saying, "If he does not pay his suppliers and laborers on this construction project, we will." If the surety company does not want to assume this obligation, but merely wants to vouch for his fidelity in applying to labor

and material claims the amount he receives from the owner, then the surety company ought, in simple good faith, to change the condition of its bond so as to make it state in plain English that it is underwriting only the fidelity of its principal in the handling of money paid to him by the owner and ought to strike from its own prepared bond form the undertaking now there stated in plain English that if the contractor does not pay the materialmen, the surety will do so, with no strings attached to the promise. It is the latter undertaking which this bond states and nothing in the pleadings set forth in the record qualifies this undertaking. If the premium charged is not adequate for the risk expressly and plainly assumed in the bond, the remedy is to increase the premium, not to distort the plain terms of the bond after the condition stated therein has been broken.

It is a matter of common knowledge that, while such a bond as that here sued upon is beneficial to the owner of the property through advoidance of the filing of claims of liens thereon, its real purpose is to benefit the owner through enabling the prime contractor to purchase labor and materials on credit. The surety company enters into the bond in return for the premium paid to it and with full knowledge that credit will be extended to the prime contractor by subcontractors, laborers and materialmen in reliance upon the bond. It is inconceivable that USF&G does not have available to it a copy of the contract between Fairway and Cecil's. Here, without any allegation that there is any provision of the contract between Fairway and Cecil's which negates or qualifies the condition of the bond, USF&G, after the plaintiff has extended to Cecil's the contemplated credit, seeks to avoid liability on its own contract, written upon a form prepared or chosen by it, solely because there *might be* something in the prime contract which purports to qualify the liability of Cecil's and its surety to the suppliers of labor and materials. We decline to adopt that test of the sufficiency of the complaint before us.

In *Foundry Co. v. Construction Co.*, 198 N.C. 177, 151 S.E. 93 (1930), this Court, speaking through Justice Adams, in a suit by a subcontractor upon a bond given to secure the prime contractor's performance of a private construction contract, such as that between Fairway and Cecil's, said:

"The contract and bond must be construed together. *Manufacturing Co. v. Andrews*, 165 N.C. 258. In the former

the contractor agreed to pay for the materials he purchased, and in the latter he not only agreed to pay all claims of materialmen; he stipulated that 'this bond shall be for the benefit of the materialmen and laborers having a just claim, as well as for J. D. Hood, trustee [the owner].' *By virtue of these provisions the claim of the plaintiff is not subject to the defenses available to the surety against Hood, the promisee and owner of the property.*" (Emphasis added.)

This is in accord with the opinions of courts of other jurisdictions. See: *Aetna Indemnity Co. v. Indianoplis Mortar & Fuel Co.,* 178 Ind. 70, 98 N.E. 706 (1912); *Getchell & Martin Lumber & Mfg. Co. v. Peterson & Sampson,* 124 Iowa 599, 100 N.W. 550 (1904); *Standard Asphalt & Rubber Co. v. Texas Bldg. Co.,* 99 Kan. 567, 162 P. 299 (1917); *Doll v. Crume,* 41 Neb. 655, N.W. 806 (1894); *Pennsylvania Supply Co. v. National Casualty Co.,* 152 Pa. Super. 217, 31 A. 2d 453 (1943).

In *Getchell & Martin Lumber & Mfg. Co. v. Peterson & Sampson, supra,* the Iowa Court said:

"So far as we can see, the rights and interest of the company were scrupulously guarded, and there is no good ground for holding the surety discharged because of irregularity in the payments [by the owner to the contractor]. Even if the surety should be held released, on this account, as to the owner, it would not follow that it is also released as to the claims of the subcontractors. The bond being given for the benefit of the latter as well as the former, their right of action cannot be affected by an act for which they are in no manner responsible. *Their right is not derived from, nor held under, the owner of the building, but it is an independent right,* of which they are not to be deprived save by their own act or default." (Emphasis added.)

In *Standard Asphalt & Rubber Co. v. Texas Bldg. Co., supra,* the Kansas Court said:

"Laborers and materialmen have rights under this statutory bond independent of the obligee. The bond is required by the Legislature for the benefit of laborers and those who furnish material for railroad construction, and no agreement between the railway company and the contractor or between him and the guaranty company can affect the rights of laborers and materialmen to recover

upon the bond given for their protection. Modifications of the contract, *or failures to observe some of its provisions,* which might be good defenses as between the guaranty company and the obligee in the bond, will not relieve the guaranty company from liability upon the bond to laborers and materialmen." (Emphasis added.)

In this respect there is no basis for distinction between a statutory bond for public construction and a bond for the payment of subcontractors, laborers and materialmen performing services or supplying materials used by the prime contractor in the performance of a private construction contract once it be determined that the bond in connection with the private construction project was given for the benefit of such claimants as well as for that of the owner. That is clearly established here by the provisions of the bond itself.

Professor Corbin, in his treatise on Contracts, in § 798, at p. 169, says:

"In any case where the third parties [RGK] have an enforceable right as beneficiaries of the bond, the direct promisee [Fairway] in the bond has no power to discharge the surety's duty to them, whether by a release, by an extension of time to the principal contractor, *by breaches of his own duties,* or by agreeing upon changes in the principal contract." (Emphasis added.)

In 17 Am. Jur. 2d, Contractor's Bonds, § 16, it is said:

"The mere fact that laborers and materialmen did not know of the existence of a contractor's bond to the owner, conditioned for their benefit, at the time they furnished the materials or labor, does not prevent them from availing themselves of the protection of the bond. * * * Furthermore, since the rights of laborers and materialmen are independent of the right of the obligee in the bond, it is generally held that *their right to recover against a surety on such a bond cannot be defeated by any act or omission of the obligee named in the bond,* not authorized or participated in by the laborers or materialmen, even though the conduct or default is such as would release the surety from liability to the obligee." (Emphasis added.)

We turn now to *Builders Corp. v. Casualty Co., supra,* upon which USF&G relies. There the bond sued upon was a per-

formance *and* a payment bond. Here the bond is a payment bond only. There the prime contractor did not complete the contract. The surety failed to do so. The contractor's creditors, including the plaintiff materialman, completed the construction and sold the building but, after applying the proceeds to the payment of a prior mortgage, nothing was left for the payment of the claims of the plaintiff and other creditors similarly situated. The contract, for the performance of which the bond was given, was not made part of the complaint. A demurrer to the complaint was sustained by this Court.

The record in that case shows that the bond there sued upon was entitled "Owner's Protective Bond," whereas the bond in the present case is entitled "Labor and Material Payment Bond." The record in that case shows that bond was conditioned upon faithful performance of the contract and payment of persons furnishing labor and materials for use in or about the construction and the saving of the owner harmless from all cost and damage by reason of the contractor's default or failure so to do. That bond further provided, "All persons who have furnished labor or material for use in or about the improvement shall have a direct right of action under the bond, *subject to the owner's priority.*" (Emphasis added.) Speaking through Justice Barnhill, later Chief Justice, this Court there said:

"To entitle a materialman to recover from the surety *on a performance bond,* he must allege and prove a debt due by the contractor for material furnished by him for use in the performance of his contract with the owner.

"The liability of the surety does not rest solely upon the terms of its bond. It grows out of and is dependent upon the terms of the contract executed by its principal. If there has been no default by the principal then there can be no enforceable debt against the surety.

"The obligation of the bond is to be read in the light *of the contract it is given to secure.* The extent of the engagement entered into by the surety is to be measured by the terms of the principal's agreement. Of necessity, therefore, to determine the surety's liability to third persons on its bond given for their benefit *and to secure the faithful performance of a building contract as it relates to*

*them,* the contract and the bond must be construed together. * * *

"The plaintiff does not plead the contract between Benfield [the principal contractor] and Harris [the owner] nor does it set forth in its complaint the material terms thereof. It is true the complaint contains the allegation that the defendant executed its bond 'reciting' certain facts in respect to a supposed contract between Benfield and Harris. But this will not suffice. The complaint must make it appear that Benfield, *by virtue of his contract with Harris,* is now indebted to it and the terms of the contract must be pleaded, certainly to the extent necessary to enable the court to determine that, upon the facts alleged, such indebtedness does exist so as to render defendant liable for the payment thereof. These allegations are essential to the cause of action plaintiff seeks to enforce.

"Only a part of the bond itself on which plaintiff relies is by reference made a part of the complaint. The builder's contract is a material part thereof. This contract is not attached either as such or as a part of the performance bond.

* * *

"*Furthermore, plaintiff's right to recover is subject to the owner's priority. What is that priority? Is it of such nature as to foreclose plaintiff's action? The Court can answer only upon a consideration of both contracts. Hence it is essential that plaintiff plead both contracts as a part of its cause of action.*" (Emphasis added throughout.)

In the Builders Corporation case, the record in this Court shows that the complaint attached, and made a part of itself, the bond sued upon and the bond expressly provided that the claim of creditors, such as the plaintiff, would be "subject to the owner's priority." Thus, the complaint on its face showed that the plaintiff's right to recover from the surety was subject to a condition precedent, namely, that all claims of the owner had been paid, leaving of the penal sum of the bond enough to pay the plaintiff in whole or in part. This condition precedent was not alleged in the complaint to have been performed. Therefore, the plaintiff in that case had not alleged a right to recover from the defendant surety and the demurrer to the complaint was properly sustained. Since the complaint in that case, on its

face, showed the owner's rights had priority over those of the plaintiff in pursuing the surety on the bond, and those rights could not be determined without the contract between the owner and the prime contractor, allegation and proof of those rights as established by the prime contract would be necessary to establish the right of the plaintiff to recover on the bond. That is not the situation in the present case. Here any right the owner (Fairway) had under the bond would be fully discharged by payment by USF&G of the claims of laborers and materialmen.

Of course, as the Court said in *Builders Corporation v. Casualty Company, supra,* "The obligation of the bond is to be read in the light of the contract it is given to secure." What contract was the present bond given to secure? It was not given to secure performance of the contract between Cecil's and Fairway but to secure the performance of the contracts between Cecil's and his suppliers of labor and materials so as to enable Cecil's to procure labor and materials on credit. Of course, as the Court there stated, "If there has been no default by the principal there can be no enforceable debt against the surety." Here there was default by the principal of the bond (Cecil's) upon the contract which the bond was given to secure. This is clearly alleged in the complaint and the bond sued upon, and the contract secured thereby, are sufficiently alleged, as to their legal effect, in the complaint.

The complaint fully meets the requirements of Rule 8 in setting forth the plaintiff's claim for relief in "a short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved showing that the pleader is entitled to relief." It was, therefore, error to dismiss the action against USF&G and the decision of the Court of Appeals is

Affirmed.

Justice EXUM, concurring in result:

I concur in the result reached by the majority. Insofar as the majority opinion intimates any conclusions as to the ultimate rights and liabilities of the parties under the bond, however, I am unwilling to join in the opinion. Such intimations at this stage of the proceedings are, I believe, premature. Since

we have held that plaintiffs have stated a claim upon which relief may be granted despite failure to attach the prime contract to the complaint, we may not yet consider the potential effect of the provisions or specifications of that contract upon the liability of the surety, USF&G, to the materialmen plaintiffs.

This bond was executed by Cecil's as principal and USF&G as surety, with Fairway as named obligee, "for the use and benefit of claimants." The latter language assuredly removes from doubt the right of plaintiffs, as claimants under the bond, to sue the surety: they are, by the above quoted language, made express third party beneficiaries. The majority correctly recognizes this. The language gives them a cause of action *procedurally* independent of any right of the obligee, insofar as the obligee need not be made a party to the suit, to allow recovery by the third party beneficiary. To that extent, I believe the majority is correct in the observation that "[t]he obligation of the principal and the surety to the plaintiff materialmen, upon their bond, is separate and independent from their obligation, if any, thereon to the owner, the named obligee." The language does not, however, of itself deprive the surety in this action of defenses which would be available to it in an action by the obligee on the bond. Therefore the rights of the third party beneficiary plaintiffs to recover are not *necessarily substantively* independent of the rights of the obligee under the bond.

There has been some indication in these proceedings that the owner has defaulted in payments to the contractor which payments may have been intended as a condition precedent to the obligation of the principal, Cecil's, *to the owner* to pay subcontractors and materialmen. We simply cannot make any prediction about the effect of such a breach upon the rights of materialmen to recover from defendant surety until we see the prime contract as well as the documents already in the record.

Whether a default by the obligee, Fairway, under the prime contract, which would serve as a good defense in an action by Fairway against the surety, may also be a good defense in an action by the subcontractor beneficiaries of the bond, depends upon the nature of the surety's obligation under the bond. If the obligation to pay claimants not paid by the general contractor is *unconditional,* then the rights of those claimants is substantively independent of the rights of the obligee-owner, and

an action by the claimants may not be defeated by proof of the obligee's default under the prime contract. On the other hand, where the owner has failed to perform a condition precedent to the liability of the surety, there is a good defense to a suit by claimants.

> "If the contract between the promisee [here Fairway, the named obligee] and the promisor is a bilateral contract, the promise made for the benefit of a third party beneficiary may be unconditional or it may be conditional on performance of the return promise or tender thereof. If unconditional, a breach of duty by the promisee will not affect the right of the beneficiary against the promisor. If conditional and dependent, on the other hand, a failure by the promisee to perform his part may terminate the duty of performance by the promisor. . . . [T]he beneficiary's right is subject to conditions of the contract, whether they be express, implied, or constructive. If the breach of the promisee 'goes to the essence' and amounts to non-fulfillment of a condition precedent, the beneficiary's right is gone." 4 Corbin on Contracts, § 819, p. 277.

A surety bond is a third party beneficiary contract, and should be construed according to the usual rules pertaining to such contracts. *See* cases cited in Annotation, 77 A.L.R. 21, supplemented in 118 A.L.R. 57. The principles relied upon in the above quoted passage from Corbin apply equally to suretyship contracts as to others. A. Stearns, *The Law of Suretyship,* § 7.18, p. 225 (J. Elder Rev. 1951) notes that if the obligee "fails to perform a condition precedent to the principal's liability, the surety will not be required to perform."

The prime contract—not the subcontracts—is referred to in the bond as "The Contract" and is expressly incorporated by reference into the bond. It is, therefore, a part of the entire contract of suretyship between Cecil's, USF&G and Fairway. Many courts have recognized the possibility that the apparently straightforward effect of the condition of a bond may be limited by the provisions of the prime contract, where that contract is made part of the bond. *See, e.g., United States Fidelity & Guaranty Co. v. Housing Authority,* 206 Md. 379, 111 A. 2d 658 (1955) and *Lange v. Board of Education of Cecil County,* 183 Md. 255, 37 A. 2d 317 (1944), where bond, contract and specifications were all examined to determine the existence of

such limitations. The rule is: "The right of laborers and materialmen to recover on a building contractor's bond depends upon the terms of the bond construed in the light of the contract in connection with which it is executed." Annotation, 77 A.L.R. 21, 55 and cases cited therein, supplemented at 118 A.L.R. 57, 62. This rule is not empty verbiage. Courts construing *performance* bonds often express the rule in different terms, but with the same effect: "The right of laborers and materialmen to recover on a building contractor's bond depends upon the terms of the bond construed in the light of the *contract, performance of which is secured by the bond.*" See Annotation, *supra.* In both cases, the contract referred to in the rule of construction is that executed contemporaneously with the bond, i.e., the prime contract.

The majority opinion states that the prime contract "is *not* the *contract, performance of which is secured by the bond* on which plaintiff sues." (Emphasis added.) This statement may not be entirely misleading, since performance of the subcontracts is to some extent apparently guaranteed by the surety. But I believe the majority has prepared fertile grounds for misunderstanding by using in this context the same language, italicized above, which is so often included in the expressions of the general rule of construction by courts construing performance bonds. In any case, whatever the light that may be shed by the subcontracts upon the surety's obligation here, the contract generally held necessary to be construed with the bond is the prime contract.

Certainly the surety may undertake to stand as absolute guarantor of the contractor's payment to materialmen regardless of conditions expressed in the prime contract. Or it may undertake to guarantee simply whatever performance is required of the contractor by the owner in the prime contract conditioned upon the owner's return performance. The language of the condition of the bond appears to impose an unconditional obligation. The ultimate nature of the obligation, however, should not be determined by us without even a glance at the prime contract.

This is for the reason that "[t]he intention of the parties to a contractor's bond is the controlling factor in determining the rights of laborers and materialmen to recover on the bond. . . . [T]his intention is to be determined by the terms of the bond construed in the light of the contract in connection

with which it is executed." 17 Am. Jur. 2d, Contractors' Bonds § 17.

A decision as to the validity of USF&G's contentions that this contract of suretyship is conditioned upon the owner's performance is unnecessary to our holding in this case, which is simply that the plaintiffs' complaint is sufficient to state a claim upon which relief may be granted. The majority seems to have gone further. Assuming the contentions of USF&G regarding Fairway's breach to be true, the majority concludes that such contentions do not, as a matter of law, bar plaintiffs' recovery. I believe this conclusion is premature. Since we do not have before us the entire contract of suretyship, lacking the prime contract incorporated by reference in the bond, we should not draw any conclusions at all as to the validity of USF&G's contentions that the owner's default is a defense in this case. The majority's statement, being unnecessary to our decision, is *obiter dictum* and is not binding upon the trial court upon remand. Although the conclusion of the majority may ultimately be seen to be correct, it goes too far at this time. Our decision should have been limited strictly to whether this complaint was sufficient to state a claim without the attachment of the prime contract. Under our law such attachment is unnecessary. To say more at this time seems unwarranted and unwise.

Chief Justice SHARP concurs in this opinion.