Justice ERVIN dissenting.
As a result of its reliance upon what I believe to be an excessively "low bar for notice pleading under [ N.C.G.S. § 1A-1,] Rule 12(b)(6)," the Court has determined that plaintiff "adequately pleaded a contract action: that he had an employment relationship with the City that included the obligation on the part of the City to pay for his defense and that the City failed to do so." In view of my belief that plaintiff did not sufficiently allege the existence of a contractual relationship between himself and the City that encompassed a right to obtain reimbursement for the costs of defending the civil actions brought against him in the Alexander, Fulmore, and Hinson suits, I am unable to agree with **52 the Court's conclusion that plaintiff's amended complaint adequately alleged the necessary waiver of governmental immunity. As a result, I respectfully dissent from the Court's decision to affirm the Court of Appeals' opinion in this case.
The trial court dismissed plaintiff's first amended complaint on the grounds that the City had not waived its right to assert governmental immunity in this case, with "[n]either the institution of a plan adopted pursuant to N.C.G.S. § 160A-167, under which a city may pay all or part of some claims against employees of the city, nor action taken by the city under N.C.G.S. § 160A-167" sufficing to work such a waiver. In reversing the trial court's order, the Court of Appeals determined that plaintiff "has essentially pleaded that he had an employment relationship with the City and that the City has contractually obligated itself to pay for his defense as a benefit of his contract," with the issue of "[w]hether the City is, in fact, obligated to pay contractually by virtue of its passage of the City Policy [going] to the merits" rather than being "the subject of this appeal." Wray v. City of Greensboro , --- N.C.App. ----, ----, 787 S.E.2d 433, 437 (2016). In upholding this determination, this Court has held that "plaintiff's first amended complaint sufficiently presents allegations of a claim sounding in contract" and "sufficiently alleges that the City consents to be sued to the extent of any such contract." As a result, the ultimate issue before the Court in this case is the extent, if any, to which plaintiff's first amended complaint adequately alleges that the City breached a contract with plaintiff under which plaintiff was entitled to obtain reimbursement for the cost of defending civil actions brought against him in connection with actions that he had taken in the course and scope of his employment by the City.
According to Rule 12(b)(6) of our Rules of Civil Procedure, a complaint is subject to dismissal in the event that it fails "to state a claim upon which relief can be granted." N.C.G.S. § 1A-1, Rule 12(b)(6) (2015). "When the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or *902 discloses facts that necessarily defeat the claim, dismissal is proper." Arnesen v. Rivers Edge Golf Club & Plantation , Inc. , 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015) (citing Wood v. Guilford County , 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) ). In determining whether a motion to dismiss for failure to state a claim for relief should be allowed or denied, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not." Sutton v. Duke , 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (quoting 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.08 (2d ed. 1968)). **53 Rule 8(a)(1) of our Rules of Civil Procedure requires civil complaints to include "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C.G.S. § 1A-1, Rule 8(a)(1) (2015). Thus, pursuant to Rule 8(a)(1), a complaint is sufficient to state a claim upon which relief can be granted in the event that
"it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and by using the rules provided for obtaining pretrial discovery to get any additional information he may need to prepare for trial." Nevertheless, the plaintiff's complaint must allege enough "to give the substantive elements of his claim."
RGK, Inc. v. U.S. Fid. & Guar. Co. , 292 N.C. 668, 674, 235 S.E.2d 234, 238 (1977) (quoting Sutton , 277 N.C. at 104-05, 176 S.E.2d at 167 ); see also United Leasing Corp. v. Miller , 45 N.C.App. 400, 405, 263 S.E.2d 313, 317 (stating that "[a] claim for relief must still satisfy the requirements of the substantive law which gave rise to the pleadings, and no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim"), disc. rev. denied , 300 N.C. 374, 267 S.E.2d 685 (1980). As this Court stated shortly after the enactment of the North Carolina Rules of Civil Procedure, "the additional requirements in our Rule 8(a)(1) manifest the legislative intent to require a more specific statement, or notice in more detail, than Federal Rule 8(a)(2) requires." Sutton , 277 N.C. at 100, 176 S.E.2d at 164.
Governmental immunity[1] "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." Craig v. New Hanover Cty. Bd. of Educ. , 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation omitted). "Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." Evans ex rel. Horton v. Hous. Auth. , 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (quoting Meyer v. Walls , 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) ). A **54 "complaint [against a local governmental entity] does not state a cause of action" unless it alleges a waiver of governmental immunity. Fields v. Durham City Bd. of Educ. , 251 N.C. 699, 701, 111 S.E.2d 910, 912 (1960).
As the Court acknowledges, a municipality can waive governmental immunity by entering into a valid express contract. See Whitfield v. Gilchrist , 348 N.C. 39, 42-43, 497 S.E.2d 412, 414 (1998) (citing Smith v. State , 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976) (holding that, "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract")). For that reason, the Court correctly notes that "a waiver of governmental immunity is implied, and effectively alleged, when the plaintiff pleads a contract claim," so that, in other words, "an allegation of a valid contract is an allegation of waiver of governmental immunity." On the other hand, in the absence of allegations that *903 the parties entered into "both an express contract and a valid contract, the State has not waived its sovereign immunity." Eastway Wrecker Serv., Inc. v. City of Charlotte , 165 N.C.App. 639, 644, 599 S.E.2d 410, 413 (2004), aff'd per curium , 360 N.C. 167, 622 S.E.2d 495 (2005) ; see also Whitfield , 348 N.C. at 42-43, 497 S.E.2d at 415 (stating that, "[c]onsistent with the reasoning of Smith , we will not first imply a contract in law where none exists in fact, then use that implication to support the further implication that the [governmental entity] has intentionally waived its [governmental immunity] and consented to be sued for damages for breach of the contract it never entered in fact").
In order to state a valid express contract claim, the plaintiff "must allege the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." RGK , 292 N.C. at 675, 235 S.E.2d at 238 (emphasis omitted) (quoting Cantrell v. Woodhill Enters ., Inc . 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968) ). Admittedly, "[t]here is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit" as long as the complaint "allege[s] in a plain and concise manner the material, ultimate facts which constitute his cause of action." Id. at 675, 235 S.E.2d at 238 (quoting City of Wilmington v. Schutt , 228 N.C. 285, 286, 45 S.E.2d 364, 366 (1947) ). At a minimum, however, a complaint must "allege such a state of facts as would put defendants ... on legal notice of the existence of the contract." Eller v. Arnold , 230 N.C. 418, 422, 53 S.E.2d 266, 269 (1949).
**55 In his amended complaint, plaintiff alleged that he "began employment with the Police Department of the City of Greensboro as a police officer in March of 1981" and was, "[t]hrough the years, ... promoted to Sergeant, Lieutenant, Assistant Chief, and[,] ultimately[,] ... to the position of Chief of Police in July of 2003." According to a City Policy adopted on 13 and 17 November 1980,[2] a copy of which is attached to plaintiff's amended complaint and incorporated in plaintiff's complaint by reference:
1. [I]t is hereby declared to be the policy of the City of Greensboro to provide for the defense of its officers and employees against civil claims and judgments and to satisfy the same, either through insurance or otherwise, when resulting from any act done or omission made, or any act allegedly done or omission allegedly made, in the scope and course of their employment or duty as employees or officers of the City, except and unless it is determined that an officer or employee (1) acted or failed to act because of actual fraud, corruption or actual malice or (2) acted or failed to act in a wanton or oppressive manner.
2. The City Manager or his designee shall determine whether or not a claim or suit filed against an officer or employee, either in his official or his individual capacity, or both, meets the standards set forth herein and the standards set forth in the aforementioned statute as specified herein for providing a defense for such officer or employee.
....
**56 4. The terms "officer" and "employee" as used herein shall mean present or past officers or employees who might hereafter *904 have claims or judgments entered against them.
5. This resolution shall not be interpreted in any way to relieve any insurance company of its obligation under any insurance policy to protect the interest of any insured under said policy, or to reduce or eliminate the rights of any officer or any employee of the City against any other party. Further, except as expressly stated herein, this resolution is not to be interpreted as an [sic] waiver of any rights the City has against any party.
6. The terms of this resolution shall include all pending claims and litigation, as well as any future claims and litigation which may arise from the date of adoption of this resolution. Further, this resolution shall constitute the uniform standards under which claims made or civil judgments entered against officers or employees or former officers or employees of the City shall be paid, and a copy of this resolution shall be maintained in the office of the City Clerk for public inspection.
According to plaintiff, the actions of City Manager Mitchell Johnson in changing the locks on plaintiff's office on 6 January 2006 "effectively ended [plaintiff's] ability to serve as Chief and[,] as a practical matter[,] terminated [plaintiff's] employment with the City." Although plaintiff requested the City to pay for his defense in the Alexander, Fulmore, and Hinson suits, the City declined to do so. As a result, plaintiff claimed to be entitled to recover "indemnity and reimbursement of fees incurred by [him] as a result of failure by the [City] to honor the provisions of the" City's legal fee and judgment payment reimbursement policy given that, "[a]t all times material to the allegations contained in the Fulmore Suit, the Hinson Suits, and the Alexander Suit, [plaintiff] acted within the course and scope of his employment as the Chief of the Greensboro Police Department"; "[t]he City has refused and continues to refuse to reimburse [plaintiff] for his legal expenses"; and "[a]s an employee of the City acting within the course and scope of his employment, and pursuant to the provisions of the City Policy, [plaintiff] is entitled to indemnification and reimbursement for the expenses he has incurred as a result of the allegations by and position taken by the City, as well as costs he **57 has incurred in connection with his defense in the Fulmore Suit, the Hinson Suits, and the Alexander Suit in the amount of $220,593.71."
A careful review of the allegations contained in the amended complaint discloses that plaintiff never alleged that the City had a contractual obligation to provide, or reimburse him for the cost of, his defense in the Alexander, Fulmore, and Hinson suits. Aside from the fact that the word "contract" is nowhere to be found in the amended complaint, plaintiff simply never alleged that the protections available under the City's defense cost reimbursement and judgment payment policy constituted any part of the consideration that plaintiff received in return for his service as a City employee. Although there is no "mandate that a complaint use any particular language" and although a complaint "need only allege facts that, if taken as true, are sufficient to establish a waiver ... of ... immunity," Fabrikant v. Currituck County , 174 N.C.App. 30, 38, 621 S.E.2d 19, 25 (2005), plaintiff has completely failed to allege any basis for a finding that the provisions of the City's defense cost reimbursement and judgment payment policy have been incorporated into plaintiff's employment contract with the City, such as, for instance, by alleging that the Policy was a component of his contract of employment with the City or that he had a vested contractual right to be reimbursed for the cost of defending the Alexander, Fulmore, and Hinson suits in accordance with the Policy. On the contrary, plaintiff has simply alleged that he was a City employee and that the Policy exists, without making an effort to establish any nexus between these two facts. I simply do not believe that these allegations suffice to work a waiver of governmental immunity on the basis of a valid, express contract.
The ordinary sense of the language utilized in plaintiff's amended complaint indicates that, instead of attempting to allege an action for breach of his contract of employment with the City, plaintiff is attempting to bring *905 a direct action to enforce a freestanding City policy separate and apart from his contract of employment. Such a reading of plaintiff's complaint is bolstered by plaintiff's repeated references to having "requested" the City to provide him with a defense or to reimburse him for the cost of his defense in the Alexander, Fulmore, and Hinson suits without making any reference to his employment contract with the City. Assuming that I have correctly interpreted plaintiff's complaint as asserting a direct claim against the City under the Policy rather than as asserting a claim for breach of plaintiff's contract of employment with the City, it is clear that plaintiff has failed to adequately allege any basis for a waiver of the City's governmental immunity defense. **58 Finally, even if plaintiff has alleged that the Policy was a portion of his contract of employment with the City, or even if plaintiff is entitled to bring a direct claim against the City on the basis of the Policy, he still cannot properly plead the requisite waiver of governmental immunity. As the Policy clearly states, "this resolution is not to be interpreted as [a] waiver of any rights the City has against any party."[3] When read in accordance with its plain meaning, the Policy itself clearly states that it should not be understood as creating any sort of enforceable contractual right or operating to work a waiver of any claim of governmental immunity that the City might otherwise be entitled to make. As a result, for all of these reasons, I respectfully dissent from my colleagues' decision and would reverse, rather than affirm, the Court of Appeals' decision to overturn the trial court's order dismissing plaintiff's complaint.[4]
Justice BEASLEY joins in this dissenting opinion.

Although "[t]he State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions," Evans ex rel. Horton v. Hous. Auth. , 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (citations omitted), "[i]n application here, the distinction is immaterial," Craig , 363 N.C. at 335 n.3, 678 S.E.2d at 353 n.3, given the obviously governmental nature of the law enforcement function.

The City's Policy, upon which plaintiff's claim rests, was founded, in turn, upon N.C.G.S. § 160A-167(a), which currently provides, in pertinent part, that, "[u]pon request made by ... any ... employee or officer, or former employee or officer, ... any city ... may provide for the defense of any civil or criminal action or proceeding brought against him either in his official or in his individual capacity, or both, on account of any act done or omission made, or any act allegedly done or omission allegedly made, in the scope and course of his employment or duty as an employee or officer of the city," with "[n]othing in this section [to] be deemed to require any city ... to provide for the defense of any action or proceeding of any nature." N.C.G.S. § 160A-167(a) (2015). The payment of any judgments entered against such municipal employees or officers, which is a subject beyond the scope of the present action given that plaintiff was not held to be liable in the Alexander, Fulmore, or Hinson suits, is governed by the provisions of N.C.G.S. § 160A-167(b) and (c).

The Policy provision quoted in the text is fully consistent with, and possibly mandated by, the provision in N.C.G.S. § 160A-167(a) that states that "[n]othing in this section shall be deemed to require any city ... to provide for the defense of any action or proceeding of any nature." In light of this provision, one could argue that a municipality lacks the necessary statutory authority to contractually obligate itself to reimburse an officer's or employee's defense costs. However, we need not decide that issue given the fact that plaintiff has, for the reasons discussed in the text, failed to adequately allege the waiver of governmental immunity necessary to support the claim that he has attempted to assert against the City in the amended complaint.

Although I am not certain that the proper interpretation of our prior decision in Blackwelder v. City of Winston-Salem , 332 N.C. 319, 420 S.E.2d 432 (1992), is directly relevant given the manner in which the Court has resolved this case, I disagree with the manner in which my colleagues have read our statement in Blackwelder to the effect that "[a]ction by the City under N.C.G.S. § 160A-167 does not waive immunity." Id. , at 324, 420 S.E.2d at 436. Although Blackwelder was, in fact, decided in the context of a tort action, I see no reason to believe that the statement quoted earlier in this footnote has no bearing on claims other than those sounding in tort, such as contract actions, and do not wish to be understood as having agreed with the Court's contrary view.