IN THE SUPREME COURT OF NORTH CAROLINA

No. 255A16

Filed 18 August 2017

DAVID WRAY

v.

CITY OF GREENSBORO

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 787 S.E.2d 433 (2016), reversing an order entered on 13 May 2015 by Judge James C. Spencer, Jr. in Superior Court, Guilford County, and remanding the case for further proceedings. Heard in the Supreme Court on 9 May 2017 in session in the Old Chowan County Courthouse (1767) in the Town of Edenton pursuant to N.C.G.S. § 7A-10(a).

*Carruthers & Roth, P.A., by Kenneth R. Keller and Mark K. York, for plaintiff-appellee.*

*Mullins Duncan Harrell & Russell PLLC, by Alan W. Duncan and Stephen M. Russell, Jr.; and Smith Moore Leatherwood LLP, by Patrick M. Kane, for defendant-appellant.*

*Wilson & Helms LLP, by Lorin J. Lapidus; and Kimberly S. Hibbard, General Counsel, and Gregory F. Schwitzgebel, III, Associate General Counsel, for North Carolina League of Municipalities, amicus curiae.*

HUDSON, Justice.

This case involves attempts by plaintiff, David Wray, a former Chief of Police for defendant, the City of Greensboro, to obtain reimbursement from the City for costs

incurred by plaintiff in defending lawsuits brought against him for events that occurred during his tenure as Chief of Police. Because we conclude that plaintiff has sufficiently pleaded waiver of governmental immunity by alleging the essence of a contract claim, we affirm the decision of the Court of Appeals reversing the trial court's order of dismissal and remanding the matter for further proceedings.

On 2 January 2009, plaintiff filed a complaint in the Superior Court in Guilford County, seeking, *inter alia*, a judgment declaring that he is entitled to indemnification and reimbursement from the City for all legal expenses incurred by him in connection with two lawsuits naming him as a defendant. In his complaint plaintiff stated that he began employment with defendant as a police officer in March 1981 and rose through the ranks to be named Chief of Police in July 2003. According to plaintiff, he was told that he "would need to take appropriate steps to restore the integrity and high standards" of the police department that had deteriorated under his predecessor. Plaintiff instituted measures that were unpopular with some officers, and he was ultimately forced to resign from his position in January 2006.

In 2007 and 2008, respectively, two police officers sued plaintiff and other individuals, as well as the City, seeking damages for various wrongs alleged to have been inflicted on them during plaintiff's tenure. In his complaint plaintiff states that he requested that the City provide him with a defense in both suits, which "contain[ed] allegations that David Wray was acting within the course and scope of his employment with the City"; however, the City refused to do so.

Plaintiff asserted that in November 1980, long before either suit was filed, "the City passed a Resolution which provided that if a City officer or an employee were sued in either their individual or official capacities, the City would provide for the defense of said employee or individual and pay any judgment resulting from said suit against the employee or official." Plaintiff stated that "[t]he Resolution provided for defense and indemnification if the employee or official were acting in the scope and course of their employment or duty, unless the employee or official: 1) acted with fraud, corruption or actual malice, or 2) acted or failed to act in a wanton or oppressive manner." The 1980 Resolution reads that, as authorized by the General Assembly in 1977 in section 160A-167 of the North Carolina General Statutes,[1] "it is . . . the policy of the City of Greensboro to provide for the defense of its officers and employees

---

[1] Section 160A-167 of the North Carolina General Statutes, titled "Defense of employees and officers; payment of judgments," reads in pertinent part:

> Upon request made by . . . any . . . former employee or officer, . . . any city . . . may provide for the defense of any civil or criminal action or proceeding brought against him either in his official or in his individual capacity, or both, on account of any act done or omission made, or any act allegedly done or omission allegedly made, in the scope and course of his employment or duty as an employee or officer of the city . . . . The defense may be provided by the city . . . by its own counsel, or by employing other counsel, or by purchasing insurance which requires that the insurer provide the defense. Providing for a defense pursuant to this section is hereby declared to be for a public purpose, and the expenditure of funds therefor is hereby declared to be a necessary expense. Nothing in this section shall be deemed to require any city . . . to provide for the defense of any action or proceeding of any nature.

N.C.G.S. § 160A-167(a) (2015).

against civil claims and judgments and to satisfy the same, either through insurance or otherwise, when resulting from any act done . . . in the scope and course of their employment," with the exceptions stated above. The policy authorizes the City Manager to determine whether a claim filed against an officer meets the standards set forth in the policy and states that the City Council "shall determine . . . whether" to provide for payment of any such claim made or judgment entered against an officer.

Plaintiff asked the court to "enter a declaratory judgment requiring the City to defend and indemnify him in connection with [both lawsuits]" and to pay his costs for defending those suits.

The case was removed to federal court to address a companion federal claim asserted by plaintiff. That claim was dismissed, and in August 2013, the state-law claim was remanded to the Superior Court in Guilford County.

On 20 October 2014, plaintiff filed an amended complaint reflecting dismissal of the federal claim and adding details to his remaining claim seeking indemnification and reimbursement from the City. Specifically, plaintiff stated that a third lawsuit was filed against him, the City, and other individuals in January 2009, and that he also had to pay his own defense costs for that action. Plaintiff reiterated that "[a]s an employee of the City acting within the course and scope of his employment, and pursuant to the provisions of the City Policy, [he] is entitled to indemnification and reimbursement for the expenses he has incurred as a result of the allegations by and

position taken by the City, as well as costs he has incurred in connection with his defense" in all three lawsuits "in the amount of $220,593.71."

On 24 November 2014, the City filed a motion to dismiss under Civil Procedure Rules 12(b)(1), 12(b)(2), and 12(b)(6). Defendant asserted that the complaint should be dismissed for "lack of a justiciable controversy, lack of personal and subject matter jurisdiction, and for failure to state a claim." Defendant argued, *inter alia*, that the claims asserted by plaintiff in his first amended complaint, including his "newly-added claims for reimbursement of legal expenses," "are barred by the doctrine of governmental immunity, and accordingly Plaintiff has failed to state a claim on which relief can be granted."

On 13 May 2015, Judge James C. Spencer, Jr. entered an order dismissing plaintiff's first amended complaint with prejudice. The trial court ruled that defendant is "shielded by the doctrine of governmental immunity, which immunity has not been waived." The court added, "Neither the institution of a plan adopted pursuant to N.C.G.S. § 160A-167, under which a city may pay all or part of some claims against employees of the city, nor action taken by the city under N.C.G.S. § 160A-167, waives governmental immunity." Plaintiff appealed to the Court of Appeals.

On 7 June 2016, a divided panel of the Court of Appeals reversed the trial court's order dismissing plaintiff's claim and remanded the matter for further proceedings. *Wray v. City of Greensboro*, ___ N.C. App. ___, 787 S.E.2d 433 (2016).

The majority held that plaintiff "has, in fact, set forth allegations that the City has waived governmental immunity . . . based on the City's act of entering into an employment agreement with Plaintiff." *Id.* at ___, 787 S.E.2d at 435.

The majority explained, "Specifically, Plaintiff has made a breach of contract claim, essentially alleging that he had a contract with the City to work for the City and that pursuant to the City's contractual obligations, the City is required to pay for his litigation expenses." *Id.* at ___, 787 S.E.2d at 435 (emphasis omitted). The majority added, "Importantly, the City is authorized to enter into employment contracts with its police officers, and the City is authorized by N.C.[G.S.] § 160A-167 to enact a policy by which it may contractually obligate itself to pay for certain legal expenses incurred by these officers." *Id.* at ___, 787 S.E.2d at 435-36.

The majority reiterated throughout its opinion that this appeal is not about the merits of plaintiff's contract claim. *Id.* at ___, 787 S.E.2d at 436-37. Rather, the issue to be resolved is whether the trial court erred in dismissing the complaint "based on the doctrine of governmental immunity, the only basis of its order." *Id.* at ___, 787 S.E.2d at 436 (emphasis omitted). The majority reviewed plaintiff's amended complaint and determined that plaintiff sufficiently alleged waiver. *Id.* at ___, 787 S.E.2d at 437. Specifically, the majority determined that plaintiff alleged "that he was employed by the City's Police Department as the Chief of Police, that he was acting within the 'course and scope of his employment' at all times material to his claim, that pursuant to the provisions of the City Policy he is entitled to

reimbursement for his legal expenses and fees, and that the City failed to honor the City Policy." *Id.* at ___, 787 S.E.2d at 437. Therefore, the majority held that plaintiff "establish[ed] waiver through a breach of Plaintiff's contractual relationship as an employee of the City." *Id.* at ___, 787 S.E.2d at 437. The majority further held that "the City is not shielded by the doctrine of governmental immunity to the extent that Plaintiff's action is based in contract." *Id.* at ___, 787 S.E.2d at 438. Accordingly, the majority reversed the trial court's order and remanded the case for further proceedings. *Id.* at ___, 787 S.E.2d at 438.

The dissent would conclude that the trial court properly granted defendant's motion to dismiss. *Id.* at ___, 787 S.E.2d at 438 (Bryant, J., dissenting). The dissent would characterize the City's policy, as declared in the 1980 Resolution, as "prescrib[ing] an intent to provide for the defense of officers and employees," which, according to the dissent, does not equate to "provid[ing] substantive rights or procedural steps." *Id.* at ___, 787 S.E.2d at 439 (citations and emphasis omitted). The dissent "would hold that the Resolution is not a contractual provision upon which plaintiff can compel defendant's performance." *Id.* at ___, 787 S.E.2d at 439.

While acknowledging that "there is plenary support for the proposition that an employer-employee relationship is essentially contractual and such a relationship often waives immunity from suit on the contract," the dissent would nonetheless affirm the trial court. *Id.* at ___, 787 S.E.2d at 439 (citations omitted). The dissent would conclude "that the record before the trial court was sufficient to determine that

plaintiff could not establish a valid contractual agreement with defendant City of Greensboro on the issue central to this action, the provision of a legal defense as a condition of employment." *Id.* at \_\_\_, 787 S.E.2d at 439-40. Accordingly, the dissent would "hold the trial court was correct in concluding that defendant . . . did not waive its governmental immunity to plaintiff's suit." *Id.* at \_\_\_, 787 S.E.2d at 440. Therefore, the dissent would affirm the trial court's order dismissing plaintiff's complaint. *Id.* at \_\_\_, 787 S.E.2d at 440. Defendant filed its appeal based on the dissenting opinion.

Because we agree that plaintiff has sufficiently pleaded waiver of governmental immunity by alleging a contract claim, we affirm the decision of the Court of Appeals reversing the trial court's order of dismissal and remanding the matter for further proceedings.

"Dismissal of an action under Rule 12(b)(6) is appropriate when the complaint 'fail[s] to state a claim upon which relief can be granted.' " *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 7 (2015) (alteration in original) (quoting N.C. R. Civ. P. 12(b)(6)). "[T]he well-pleaded material allegations of the complaint are taken as [admitted]; but conclusions of law or unwarranted deductions of fact are not admitted." *Id.* at 448, 781 S.E.2d at 7 (first alteration in original) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)). "The system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Ladd v. Estate of Kellenberger*, 314 N.C.

477, 481, 334 S.E.2d 751, 755 (1985). "A complaint should not be dismissed under Rule 12(b)(6) '. . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim.' " *Id.* at 481, 334 S.E.2d at 755 (quoting *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)). "We review appeals from dismissals under Rule 12(b)(6) de novo." *Arnesen*, 368 N.C. at 448, 781 S.E.2d at 8 (citing *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013)). Additionally, "[q]uestions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo." *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016) (citations omitted).

As a general rule, "[u]nder the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (quoting *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997)); *see also Smith v. State*, 289 N.C. 303, 309, 222 S.E.2d 412, 417 (1976). Specifically, "[t]he doctrine has proscribed both contract and tort actions against the [S]tate and its administrative agencies, as well as suits to prevent a State officer or Commission from performing official duties or to control the exercise of judgment on the part of State officers or agencies." *Smith*, 289 N.C. at 309-10, 222 S.E.2d at 417 (citations omitted). Governmental immunity is that portion of the State's sovereign immunity which extends to local governments. *See, e.g.*, *Evans*, 359 N.C. at 53, 602 S.E.2d at 670; *Meyer*, 347 N.C. at 104, 489 S.E.2d at 884.

A State or local government, however, waives that immunity when it enters into a valid contract, to the extent of that contract. *Whitfield v. Gilchrist*, 348 N.C. 39, 42-43, 497 S.E.2d 412, 414 (1998); *Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24. Specifically, this Court has held "that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24. Thus, "in causes of action on contract . . . , the doctrine of sovereign immunity will not be a defense to the State. The State will occupy the same position as any other litigant." *Id.* at 320, 222 S.E.2d at 424 (citation omitted). "Likewise, a city or county waives immunity when it 'enters into a valid contract.' " *Wray*, ___ N.C. App. at ___, 787 S.E.2d at 436 (majority opinion) (emphasis omitted) (quoting *M Series Rebuild, LLC v. Town of Mount Pleasant*, 222 N.C. App. 59, 65, 730 S.E.2d 254, 259, *disc. rev. denied*, 366 N.C. 413, 735 S.E.2d 190 (2012)).

"In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Fabrikant v. Currituck County*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005) (quoting *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (citations omitted), *disc. rev. denied*, 357 N.C. 165, 580 S.E.2d 695 (2003)); *accord Hinson v. City of Greensboro*, 232 N.C. App. 204, 210, 753 S.E.2d 822, 827 (2014). "This requirement does not,

however, mandate that a complaint use any particular language. Instead, consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are *sufficient to establish* a waiver . . . [of] immunity." *Fabrikant*, 174 N.C. App. at 38, 621 S.E.2d at 25 (emphasis added) (citation omitted). Because in contract actions "the doctrine of sovereign immunity will not be a defense," a waiver of governmental immunity is implied, and effectively alleged, when the plaintiff pleads a contract claim. *See Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24 ("[W]henever the State of North Carolina . . . enters into a valid contract, *the State implicitly consents to be sued* for damages on the contract in the event it breaches the contract." (emphasis added)). Thus, an allegation of a valid contract is an allegation of waiver of governmental immunity.

Here plaintiff adequately pleaded a contract action: that he had an employment relationship with the City that included the obligation on the part of the City to pay for his defense and that the City failed to do so. Specifically, in his first amended complaint plaintiff alleged, in pertinent part, as follows:

> 2. The plaintiff . . . was formerly Chief of Police of the Greensboro Police Department.
>
> . . . .
>
> 4. David Wray began employment with the Police Department of the City of Greensboro as a police officer in March of 1981.
>
> 5[.] Through the years, David Wray was promoted to Sergeant, Lieutenant, Assistant Chief, and ultimately

was promoted . . . to the position of Chief of Police in July of 2003.

. . . .

25.   Mitchell Johnson's actions in locking David Wray from his office effectively ended David Wray's ability to serve as Chief and as a practical matter terminated David Wray's employment with the City.

26.   David Wray submitted his resignation as Chief on January 9, 2006.

. . . .

35[.]   At all times material hereto . . . David Wray acted in the scope and course of his employment with the City, and not because of actual fraud, corruption, actual malice, or in a wanton or oppressive manner.

. . . .

38[.]   By letter dated June 5, 2007, counsel for David Wray wrote to counsel representing the City, pointing out that the Fulmore complaint pertained to "official capacity" conduct on the part of David Wray and requested that the City indemnify David Wray and provide him with a defense in the action. . . .

39.   By letter dated July 3, 2007, counsel for the City responded to the request that the City provide David Wray with representation by providing a copy of the City Policy dated 13 November 1980 and 18 November 1980 ("City Policy") and denied the request for representation, based "on current information." . . .

40.   Upon information and belief, the City paid for representation of Randy Gerringer, Brian Bissett and Craig McMinn in the Fulmore Suit.

. . . .

46. David Wray also requested that the City provide him with a defense in connection with the Hinson Suits.

47. The City did not defend David Wray or provide David Wray with a defense in the Hinson Suits.

. . . .

51. David Wray requested that the City provide him with a defense and indemnification in the Alexander Suit.

52. The City did not defend David Wray or provide David Wray with a defense in the Alexander Suit.

. . . .

62. At all times material hereto, David Wray was acting within the course and scope of his employment with the City of Greensboro, in the good faith discharge of his duties.

. . . .

64. At all times material to the allegations contained in the Fulmore Suit, the Hinson Suits, and the Alexander Suit, David Wray acted within the course and scope of his employment as the Chief of the Greensboro Police Department and is entitled to reimbursement for costs he incurred to defend himself in connection with the statements made by the City, as well as costs incurred in connection with his defense in the Fulmore Suit, the Hinson Suits, and the Alexander Suit.

65[.] The City has refused and continues to refuse to reimburse David Wray for his legal expenses.

66. As an employee of the City acting within the course and scope of his employment, and pursuant to the

> provisions of the City Policy, David Wray is entitled to indemnification and reimbursement for the expenses he has incurred as a result of the allegations by and position taken by the City, as well as costs he has incurred in connection with his defense in the Fulmore Suit, the Hinson Suits, and the Alexander Suit in the amount of $220,593.71.

In sum, plaintiff alleged that he was an "employee of" defendant, that he "acted within the course and scope of his employment as the Chief of the Greensboro Police Department," that "pursuant to the provisions of the City Policy, [he] is entitled to indemnification and reimbursement for the . . . costs he has incurred in connection with his defense" in various lawsuits, and that defendant "has refused and continues to refuse to reimburse" him.

In light of the low bar for notice pleading under Rule 12(b)(6), as well as the waiver of governmental immunity that is inferred from the pleading of a contract claim, we conclude that the averments in plaintiff's first amended complaint are sufficient to allege a waiver of governmental immunity due to the City's failure to honor contractual obligations to plaintiff as an employee. Although we hold that dismissal of the complaint was not warranted, like the Court of Appeals, we express no opinion on the merits of plaintiff's contract action. We simply conclude, as we did in *Smith*, that "plaintiff is not to be denied his day in court because his contract was with" the City. *Smith*, 289 N.C. at 322, 222 S.E.2d at 424.

Moreover, the trial court erroneously concluded that the City was "shielded by the doctrine of governmental immunity" based on this Court's decision in *Blackwelder*

*v. City of Winston-Salem*, 332 N.C. 319, 420 S.E.2d 432 (1992). Citing *Blackwelder*, the trial court stated: "Neither the institution of a plan adopted pursuant to N.C.G.S. § 160A-167, under which a city may pay all or part of some claims against employees of the city, nor action taken by the city under N.C.G.S. § 160A-167, waives governmental immunity." *Blackwelder*, however, does not control here. In *Blackwelder* this Court stated that "[a]ction by the City under N.C.G.S. § 160A-167 does not waive immunity" in the context of a tort action, noting that "N.C.G.S. § 160A-485 provides that the *only way* a city may waive its governmental immunity is by the purchase of liability insurance." 332 N.C. at 324, 420 S.E.2d at 436 (emphasis added). Section 160A-485 of the North Carolina General Statutes specifically addresses waiver of immunity from civil liability in tort. N.C.G.S. § 160A-485(a) (2015) ("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."). Here, in the context of a contract action, rather than a tort action, section 160A-485 has no application and does not limit how governmental immunity may be waived. Because there is no analogous statute limiting mechanisms for waiver of governmental immunity in the context of contract actions, the reasoning in *Blackwelder* does not control here.

We conclude that plaintiff's first amended complaint sufficiently presents allegations of a claim sounding in contract. As such, we further conclude that the complaint sufficiently alleges that the City has consented to be sued to the extent of any such contract. These allegations are adequate to raise a waiver of governmental

immunity, and thus, to survive the City's motion to dismiss. For these reasons, we affirm the decision of the Court of Appeals reversing the trial court's order of dismissal and remanding the matter for further proceedings.

AFFIRMED.

Justice ERVIN dissenting.

As a result of its reliance upon what I believe to be an excessively "low bar for notice pleading under [N.C.G.S. § 1A-1,] Rule 12(b)(6)," the Court has determined that plaintiff "adequately pleaded a contract action: that he had an employment relationship with the City that included the obligation on the part of the City to pay for his defense and that the City failed to do so." In view of my belief that plaintiff did not sufficiently allege the existence of a contractual relationship between himself and the City that encompassed a right to obtain reimbursement for the costs of defending the civil actions brought against him in the Alexander, Fulmore, and Hinson suits, I am unable to agree with the Court's conclusion that plaintiff's amended complaint adequately alleged the necessary waiver of governmental immunity. As a result, I respectfully dissent from the Court's decision to affirm the Court of Appeals' opinion in this case.

The trial court dismissed plaintiff's first amended complaint on the grounds that the City had not waived its right to assert governmental immunity in this case, with "[n]either the institution of a plan adopted pursuant to N.C.G.S. § 160A-167, under which a city may pay all or part of some claims against employees of the city, nor action taken by the city under N.C.G.S. § 160A-167" sufficing to work such a waiver. In reversing the trial court's order, the Court of Appeals determined that plaintiff "has essentially pleaded that he had an employment relationship with the City and that the City has contractually obligated itself to pay for his defense as a benefit of his contract," with the issue of "[w]hether the City is, in fact, obligated to pay *contractually* by virtue of its passage of the City Policy [going] to the merits" rather than being "the subject of this appeal." *Wray v. City of Greensboro*, ___ N.C. App. ___, ____, 787 S.E.2d 433, 437 (2016). In upholding this determination, this Court has held that "plaintiff's first amended complaint sufficiently presents allegations of a claim sounding in contract" and "sufficiently alleges that the City consents to be sued to the extent of any such contract." As a result, the ultimate issue before the Court in this case is the extent, if any, to which plaintiff's first amended complaint adequately alleges that the City breached a contract with plaintiff under which plaintiff was entitled to obtain reimbursement for the cost of defending civil actions brought against him in connection with actions that he had taken in the course and scope of his employment by the City.

According to Rule 12(b)(6) of our Rules of Civil Procedure, a complaint is subject to dismissal in the event that it fails "to state a claim upon which relief can be granted." N.C.G.S. § 1A-1, Rule 12(b)(6) (2015). "When the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or discloses facts that necessarily defeat the claim, dismissal is proper." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015) (citing *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). In determining whether a motion to dismiss for failure to state a claim for relief should be allowed or denied, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (quoting 2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.08 (2d ed. 1968)).

Rule 8(a)(1) of our Rules of Civil Procedure requires civil complaints to include "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C.G.S. § 1A-1, Rule 8(a)(1) (2015). Thus, pursuant to Rule 8(a)(1), a complaint is sufficient to state a claim upon which relief can be granted in the event that

> "it gives sufficient notice of the events or transactions
> which produced the claim to enable the adverse party to
> understand the nature of it and the basis for it, to file a
> responsive pleading, and by using the rules provided for
> obtaining pretrial discovery to get any additional

> information he may need to prepare for trial." Nevertheless, the plaintiff's complaint must allege enough "to give the substantive elements of his claim."

*RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 674, 235 S.E.2d 234, 238 (1977) (quoting *Sutton*, 277 N.C. at 104-05, 176 S.E.2d at 167); *see also United Leasing Corp. v. Miller*, 45 N.C. App. 400, 405, 263 S.E.2d 313, 317 (stating that "[a] claim for relief must still satisfy the requirements of the substantive law which gave rise to the pleadings, and no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim"), *disc. rev. denied*, 300 N.C. 374, 267 S.E.2d 685 (1980). As this Court stated shortly after the enactment of the North Carolina Rules of Civil Procedure, "the additional requirements in our Rule 8(a)(1) manifest the legislative intent to require a more specific statement, or notice in more detail, than Federal Rule 8(a)(2) requires." *Sutton*, 277 N.C. at 100, 176 S.E.2d at 164.

Governmental immunity[1] "shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation omitted). "Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of

---

[1] Although "[t]he State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions," *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (citations omitted), "[i]n application here, the distinction is immaterial," *Craig*, 363 N.C. at 335 n.3, 678 S.E.2d at 353 n.3, given the obviously governmental nature of the law enforcement function.

immunity." *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (quoting *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997)). A "complaint [against a local governmental entity] does not state a cause of action" unless it alleges a waiver of governmental immunity. *Fields v. Durham City Bd. of Educ.*, 251 N.C. 699, 701, 111 S.E.2d 910, 912 (1960).

As the Court acknowledges, a municipality can waive governmental immunity by entering into a valid express contract. *See Whitfield v. Gilchrist*, 348 N.C. 39, 42-43, 497 S.E.2d 412, 414 (1998) (citing *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976) (holding that, "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract")). For that reason, the Court correctly notes that "a waiver of governmental immunity is implied, and effectively alleged, when the plaintiff pleads a contract claim," so that, in other words, "an allegation of a valid contract is an allegation of waiver of governmental immunity." On the other hand, in the absence of allegations that the parties entered into "both an express contract and a valid contract, the State has not waived its sovereign immunity." *Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 644, 599 S.E.2d 410, 413 (2004), *aff'd per curium*, 360 N.C. 167, 622 S.E.2d 495 (2005); *see also Whitfield*, 348 N.C. at 42-43, 497 S.E.2d at 415 (stating that, "[c]onsistent with the reasoning of *Smith*, we will not first imply a contract in law where none exists in fact, then use that implication to support the

further implication that the [governmental entity] has intentionally waived its [governmental immunity] and consented to be sued for damages for breach of the contract it never entered in fact").

In order to state a valid express contract claim, the plaintiff "must allege the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." *RGK*, 292 N.C. at 675, 235 S.E.2d at 238 (emphasis omitted) (quoting *Cantrell v. Woodhill Enters., Inc.* 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968)). Admittedly, "[t]here is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit" as long as the complaint "allege[s] in a plain and concise manner the material, ultimate facts which constitute his cause of action." *Id.* at 675, 235 S.E.2d at 238 (quoting *City of Wilmington v. Schutt*, 228 N.C. 285, 286, 45 S.E.2d 364, 366 (1947)). At a minimum, however, a complaint must "allege such a state of facts as would put defendants . . . on legal notice of the existence of the contract." *Eller v. Arnold*, 230 N.C. 418, 422, 53 S.E.2d 266, 269 (1949).

In his amended complaint, plaintiff alleged that he "began employment with the Police Department of the City of Greensboro as a police officer in March of 1981" and was, "[t]hrough the years, . . . promoted to Sergeant, Lieutenant, Assistant Chief, and[,] ultimately[,] . . . to the position of Chief of Police in July of 2003." According to

a City Policy adopted on 13 and 17 November 1980,[2] a copy of which is attached to

plaintiff's amended complaint and incorporated in plaintiff's complaint by reference:

1. [I]t is hereby declared to be the policy of the City of Greensboro to provide for the defense of its officers and employees against civil claims and judgments and to satisfy the same, either through insurance or otherwise,, when resulting from any act done or omission made, or any act allegedly done or omission allegedly made, in the scope and course of their employment or duty as employees or officers of the City, except and unless it is determined that an officer or employee (1) acted or failed to act because of actual fraud, corruption or actual malice or (2) acted or failed to act in a wanton or oppressive manner.

2. The City Manager or his designee shall determine whether or not a claim or suit filed against an officer or employee, either in his official or his individual capacity, or both, meets the standards set forth herein and the standards set forth in the aforementioned statute as specified herein for providing a defense for such officer or employee.

   . . . .

4. The terms "officer" and "employee" as used herein shall mean present or past officers or employees who might

---

[2] The City's Policy, upon which plaintiff's claim rests, was founded, in turn, upon N.C.G.S. § 160A-167(a), which currently provides, in pertinent part, that, "[u]pon request made by . . . any . . . employee or officer, or former employee or officer, . . . any city . . . may provide for the defense of any civil or criminal action or proceeding brought against him either in his official or in his individual capacity, or both, on account of any act done or omission made, or any act allegedly done or omission allegedly made, in the scope and course of his employment or duty as an employee or officer of the city," with "[n]othing in this section [to] be deemed to require any city . . . to provide for the defense of any action or proceeding of any nature." N.C.G.S. § 160A-167(a) (2015). The payment of any judgments entered against such municipal employees or officers, which is a subject beyond the scope of the present action given that plaintiff was not held to be liable in the Alexander, Fulmore, or Hinson suits, is governed by the provisions of N.C.G.S. § 160A-167(b) and (c).

hereafter have claims or judgments entered against them.

5. This resolution shall not be interpreted in any way to relieve any insurance company of its obligation under any insurance policy to protect the interest of any insured under said policy, or to reduce or eliminate the rights of any officer or any employee of the City against any other party. Further, except as expressly stated herein, this resolution is not to be interpreted as an [sic] waiver of any rights the City has against any party.

6. The terms of this resolution shall include all pending claims and litigation, as well as any future claims and litigation which may arise from the date of adoption of this resolution. Further, this resolution shall constitute the uniform standards under which claims made or civil judgments entered against officers or employees or former officers or employees of the City shall be paid, and a copy of this resolution shall be maintained in the office of the City Clerk for public inspection.

According to plaintiff, the actions of City Manager Mitchell Johnson in changing the locks on plaintiff's office on 6 January 2006 "effectively ended [plaintiff's] ability to serve as Chief and[,] as a practical matter[,] terminated [plaintiff's] employment with the City." Although plaintiff requested the City to pay for his defense in the Alexander, Fulmore, and Hinson suits, the City declined to do so. As a result, plaintiff claimed to be entitled to recover "indemnity and reimbursement of fees incurred by [him] as a result of failure by the [City] to honor the provisions of the" City's legal fee and judgment payment reimbursement policy given that, "[a]t all times material to the allegations contained in the Fulmore Suit, the Hinson Suits, and the Alexander Suit, [plaintiff] acted within the course and scope of his employment as the Chief of

the Greensboro Police Department"; "[t]he City has refused and continues to refuse to reimburse [plaintiff] for his legal expenses"; and "[a]s an employee of the City acting within the course and scope of his employment, and pursuant to the provisions of the City Policy, [plaintiff] is entitled to indemnification and reimbursement for the expenses he has incurred as a result of the allegations by and position taken by the City, as well as costs he has incurred in connection with his defense in the Fulmore Suit, the Hinson Suits, and the Alexander Suit in the amount of $220,593.71."

A careful review of the allegations contained in the amended complaint discloses that plaintiff never alleged that the City had a contractual obligation to provide, or reimburse him for the cost of, his defense in the Alexander, Fulmore, and Hinson suits. Aside from the fact that the word "contract" is nowhere to be found in the amended complaint, plaintiff simply never alleged that the protections available under the City's defense cost reimbursement and judgment payment policy constituted any part of the consideration that plaintiff received in return for his service as a City employee. Although there is no "mandate that a complaint use any particular language" and although a complaint "need only allege facts that, if taken as true, are sufficient to establish a waiver . . . of . . . immunity," *Fabrikant v. Currituck County*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005), plaintiff has completely failed to allege any basis for a finding that the provisions of the City's defense cost reimbursement and judgment payment policy have been incorporated into plaintiff's employment contract with the City, such as, for instance, by alleging

that the Policy was a component of his contract of employment with the City or that he had a vested contractual right to be reimbursed for the cost of defending the Alexander, Fulmore, and Hinson suits in accordance with the Policy. On the contrary, plaintiff has simply alleged that he was a City employee and that the Policy exists, without making an effort to establish any nexus between these two facts. I simply do not believe that these allegations suffice to work a waiver of governmental immunity on the basis of a valid, express contract.

The ordinary sense of the language utilized in plaintiff's amended complaint indicates that, instead of attempting to allege an action for breach of his contract of employment with the City, plaintiff is attempting to bring a direct action to enforce a freestanding City policy separate and apart from his contract of employment. Such a reading of plaintiff's complaint is bolstered by plaintiff's repeated references to having "requested" the City to provide him with a defense or to reimburse him for the cost of his defense in the Alexander, Fulmore, and Hinson suits without making any reference to his employment contract with the City. Assuming that I have correctly interpreted plaintiff's complaint as asserting a direct claim against the City under the Policy rather than as asserting a claim for breach of plaintiff's contract of employment with the City, it is clear that plaintiff has failed to adequately allege any basis for a waiver of the City's governmental immunity defense.

Finally, even if plaintiff has alleged that the Policy was a portion of his contract of employment with the City, or even if plaintiff is entitled to bring a direct claim

against the City on the basis of the Policy, he still cannot properly plead the requisite waiver of governmental immunity. As the Policy clearly states, "this resolution is not to be interpreted as [a] waiver of any rights the City has against any party."[3] When read in accordance with its plain meaning, the Policy itself clearly states that it should not be understood as creating any sort of enforceable contractual right or operating to work a waiver of any claim of governmental immunity that the City might otherwise be entitled to make. As a result, for all of these reasons, I respectfully dissent from my colleagues' decision and would reverse, rather than affirm, the Court of Appeals' decision to overturn the trial court's order dismissing plaintiff's complaint.[4]

Justice BEASLEY joins in this dissenting opinion.

---

[3] The Policy provision quoted in the text is fully consistent with, and possibly mandated by, the provision in N.C.G.S. § 160A-167(a) that states that "[n]othing in this section shall be deemed to require any city . . . to provide for the defense of any action or proceeding of any nature." In light of this provision, one could argue that a municipality lacks the necessary statutory authority to contractually obligate itself to reimburse an officer's or employee's defense costs. However, we need not decide that issue given the fact that plaintiff has, for the reasons discussed in the text, failed to adequately allege the waiver of governmental immunity necessary to support the claim that he has attempted to assert against the City in the amended complaint.

[4] Although I am not certain that the proper interpretation of our prior decision in *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 420 S.E.2d 432 (1992), is directly relevant given the manner in which the Court has resolved this case, I disagree with the manner in which my colleagues have read our statement in *Blackwelder* to the effect that "[a]ction by the City under N.C.G.S. § 160A-167 does not waive immunity." *Id.*, at 324, 420 S.E.2d at 436. Although *Blackwelder* was, in fact, decided in the context of a tort action, I see no reason to believe that the statement quoted earlier in this footnote has no bearing on claims other than those sounding in tort, such as contract actions, and do not wish to be understood as having agreed with the Court's contrary view.